**SAFEWAY STORES, INC., OF TEXAS v. WEBB et ux.**

No. 2260.

Court of Civil Appeals of Texas. Eastland.

June 19, 1942.

Rehearing Denied Sept. 25, 1942.

Blanton & Blanton, of Albany, for appellant.

Scarborough, Yates & Scarborough, of Abilene, for appellees.

LESLIE, Chief Justice.

C. R. Webb and wife brought this suit against Safeway Stores, Inc., of Texas to recover damages for the death of plaintiffs' daughter, Lucille Webb, who, while riding in an automobile driven by S. B. Roberts, was fatally injured in a collision between said automobile and the rear end of a truck and trailer owned by defendant and operated by one of its employees. The alleged cause of action included several different grounds of recovery.

We shall not set forth the pleadings in full, or attempt to group the allegations constituting each such ground of recovery, but suffice it to say that after a careful consideration of the petition we are convinced that there is sufficient and consistent foundation in the pleadings for the material issues submitted to the jury.

The defendant alleged a number of different grounds of defense based upon contributory negligence. In a jury trial special issues were submitted relating to five grounds of recovery. The special issues pertaining to three grounds of recovery were found in favor of the plaintiffs. Two grounds of recovery were found in favor of the defendant. All issues of contributory negligence were found in favor of the plaintiffs. On the verdict judgment was rendered in favor of plaintiffs for $5,450. The defendant appeals.

The appeal is presented in this court on 56 assignments of error. In the disposition of practically all these assignments the majority of this court is in full accord with the views expressed in the opinion suggested by Associate Justice FUNDERBURK who first made a careful study of this record. Such views and discussions of his as are taken from that opinion and adopted in this one will appear in paragraphs quoted. In that opinion, and after careful consideration of the 56 assignments of error, he pretermitted discussion of and overruled all assignments of error, except 1, 2, 3, 28, 30, 44, 45, 46, 47 and 55. As stated, the majority sanctions that disposition of the points not discussed and concur in overruling points 46 and 47 for the reasons hereinafter set out and adopted from said opinion.

Points 1, 2, and 3 will first be disposed of. These are attacks on the verdict of the jury and judgment thereon in reference to certain issues presently to be noticed:

By issue No. 1 the jury found that "It was negligence for the defendant's truck driver to stop his truck at the time and on the occasion in question." By issue No. 1-A, the jury found that negligence to be a "proximate cause of the collision." Point 1 complains that the trial court's action in overruling defendant's motion for an instructed verdict was error. Point 2 assails the ruling of the trial court in refusing defendant a judgment non obstante veredicto "because the undisputed evidence shows * * * appellees wholly failed to establish any negligence upon the part of the appellant's truck driver." Point 3 asserts the answer of the jury to issue No. 1 (stated above) "is wholly unsupported by and contrary to the evidence."

Obviously, points 1, 2, and 3 raise, in substance, the same question, viz., that there is no evidence to raise an issue of negligence upon the part of the defendant's truck driver at the time and place, and under the circumstances, of the collision in which the plaintiffs' daughter lost her life. In the light of the attack thus made, these issues call for a consideration of the entire evidence.

Under the assignment or point complaining of the court's refusal to instruct a verdict, it is only necessary to de-

termine whether under the evidence introduced an issue was raised. It is well established that a reviewing court will not disturb the verdict of the jury on conflicting evidence, where there is some evidence to support the verdict. Security Ins. Co. v. Vines, Tex.Civ.App., 48 S.W.2d 1017, writ refused; Jefferson Standard Life Ins. Co. v. Lindsey, Tex.Civ.App., 94 S.W.2d 549; Century Indemnity Co. v. Carnes, Tex.Civ. App., 138 S.W.2d 555(4); 3 Tex.Jur. p. 1096, sec. 768, and the many authorities there cited; 41 Tex.Jur. p. 1041, sec. 237.

■ An applicable rule stated somewhat differently is to this effect: "If, discarding all adverse evidence, and giving credit to all evidence that is favorable to the successful party and indulging every legitimate conclusion that is favorable to him, a jury might have found in his favor, then it is to be concluded that there is evidence to support the verdict." 17 Tex.Jur. p. 910, sec. 410; Wininger v. Ft. Worth & D. C. Co., 105 Tex. 56, 143 S.W. 1150; Century Indemnity Co. v. Carnes, Tex.Civ.App., 138 S.W.2d 555; McCarty v. Hogan, Tex.Civ. App., 121 S.W.2d 499; Choate v. San Antonio & A. P. Ry. Co., 91 Tex. 406, 44 S.W. 69; Oats v. Dublin Nat. Bank, 127 Tex. 2, 90 S.W.2d 824.

■ With the above rule of law in mind, we have carefully read the entire statement of facts and readily reach the conclusion that as to said issues there is sufficient testimony to support the jury finding of negligence on the part of appellant's truck driver, as well as the finding that the same was the proximate cause of the injury. The evidence on said issues was conflicting and would have warranted either an affirmative or negative answer. In that state of the record, this court is without authority to substitute its finding upon the issues for those of the jury. Post v. State, 106 Tex. 500, 171 S.W. 707; Oats v. Dublin Nat. Bank, supra.

To so substitute this court's finding under the testimony would, in our opinion, amount to a clear encroachment on the plaintiffs' rights, since the Bill of Rights, Const. Art. 1, sec. 15, Vernon's Ann.St., "contains the emphatic declaration that 'the right of trial by jury shall remain inviolate.'" Choate v. San Antonio & A. P. Ry. Co., supra; Dolen v. Lobit, Tex.Com.App., 262 S.W. 731; Shanks v. First State Bank of Coahoma, Tex.Civ.App., 70 S.W.2d 444.

Our convictions derived from a study of the testimony in the light of the above rules of law much incline us to set forth the testimony, but such testimony as a whole is embraced in 458 pages, and to incorporate herein merely that part which supports the verdict or "is favorable to the successful party" would unduly lengthen this opinion.

By point 28 the appellant insists that the court erred in submitting special issue No. 3. That issue was: "Do you find from a preponderance of the evidence that the act of the defendant's truck driver in parking the truck on the paved portion of the highway was negligence?" The issue was answered in the affirmative, and the point insists that the court erred in submitting issue 3 "because the *undisputed evidence* was that defendant's truck driver did not park its truck on said highway but merely stopped momentarily at a point where the pavement on his side was obstructed and on the other side * * * cars were fast approaching him from the opposite direction * * *." (Italics ours)

■■ No question of sufficiency or insufficiency of the evidence is suggested by this point. Hall Music v. Robinson, 117 Tex. 261, 1 S.W.2d 857. Point 28 is presented as "germane to ground 57 in the appellant's motion for new trial." That ground of said motion complains merely of the court's action in excluding testimony referred to in preceding grounds 54, 55 and 56 of said motion. In these preceding grounds, respectively, the appellant insists that the trial court erred in excluding the testimony of its office manager, Knuckles; its district manager Williams, and its Abilene manager Barton to the effect that Mason, the driver of appellant's truck at the time of the accident was a careful, efficient and dependable driver. Certainly there is nothing in ground 57, based on the exclusion of such testimony, tending to establish that the court erred as alleged in point 28, especially in matters of "undisputed evidence."

Further, if appellant meant to refer to ground 37, motion for new trial, as the ground of error to which point 28 is germane, rather than ground 57 specifically referred to in the point and so considered above, then point 28 is equally without merit for the reasons above stated, and especially for the reasons and upon the authorities set forth in the disposition of point 55 following.

872

In point 28 appellant is talking about facts established by "undisputed evidence", while in the motion for new trial (ground 37) he asserts the court erred in submitting issue 3 "because the court *assumed* that the driver of the defendant's truck had 'parked the truck on the paved portion of the highway' and was charged [a charge] *on the weight of the evidence*", etc. (Italics ours) No such exception was made to the submission of the issue before the same was read to the jury. Such exceptions that are not timely made and presented to the court are waived. *City of Abilene v. Moore*, Tex.Civ.App., 12 S.W.2d 604, 606, and other authorities cited under the discussion herein of points 30 and 55.

In the Moore case, this court, in an opinion by Chief Judge Hickman, said: "It is urged in the brief that the issue *assumed facts* and was on the *weight of the evidence*. The record does not disclose that this objection was offered in the appellant's criticism of the court's charge, and for that reason it cannot be considered on appeal." (Italics ours)

For the trial court to have adopted the appellant's view of the evidence as "undisputed" as contended for by it in point 28 would have been for the court to flatly adopt the appellant's assertion "that such matters were undisputed and favorable to the appellant." We think no part of the testimony susceptible to any such construction and the trial court did not err in refusing to adopt any such theory.

We find that the testimony in the respect mentioned was not undisputed in the respect contended, but conflicting in its nature and sufficient to sustain the verdict of the jury. There is substantial testimony that there was no obstruction at all on the side of the pavement where appellant's truck was traveling. There was testimony that a gasoline tank referred to in the testimony as having left the pavement, was two to four feet from the edge of the pavement.

If the appellant's testimony be taken as true, which the law forbids at this stage of the litigation, it would tend to show that the gasoline tank or its "bumper" protruded 4 or 5 inches onto the pavement and that the space between that point and the middle of the 20 foot pavement (black line) remained open, thus making it unnecessary for appellant's driver to stop at all. There was testimony by appellant that the gasoline

truck was discovered by the appellant's approaching truck driver about 80 yards from the point where he stopped and the collision occurred. The driver's testimony was that he was driving at the moderate speed of 25 miles per hour; that he could see through his "reflector" and when he stopped his truck the car behind him (in which deceased was riding) was 75 yards from him, and approaching cars on the other side of the pavement were also about 75 yards from that point and had slowed down. That on stopping he put on his truck and trailer wheel brakes.

When his attention was called to the deposition he made immediately after the accident, Mason, appellant's truck driver, testified concerning the projection of the gasoline truck over the pavement and speed of the approaching cars in front, as follows:

"Q. And this Chrysler coupe was coming behind you about 75 yards? A. Yes sir. * * *

"Q. Your van was approximately 8 feet from outside to outside wasn't it? A. Yes sir. * * *

"Q. It was just a little less than 8 feet, wasn't it? A. Yes sir. * * *

"Q. And the cars you were meeting were driving very slowly? A. They had slowed down, yes sir.

"Q. They were driving very slowly when they met you? A. Well, they had slowed down.

"Q. That is what you swore in your deposition? A. They had slowed down. I called for dimmers and they slowed down. * * *

"Q. You had slowed down, hadn't you? A. Yes.

"Q. The oncoming traffic, to you, had slowed down, hadn't it? A. Yes sir. * * *

"Q. You could have pulled off on the right hand side of that road there where they had the old detour there, couldn't you? A. I could have gotten off."

Under these and kindred circumstances, we conclude that even from the standpoint of appellant's testimony an issue of fact arose warranting the court in the submission of said issue No. 3. However, in passing upon that question a different test is required in determining whether or not the court erred as contended. This court must employ the rule of law stated in 41 Tex.Jur. p. 1041, sec.

237, in substance, as follows: "A jury question is raised if the evidence, viewed in its most favorable light—disregarding all evidence to the contrary and indulging every legitimate inference—substantially supports the material allegations. As has been said 'if there be any evidence on an issue of fact, upon which reasonable minds could differ, it becomes the duty of the trial court, where requested, to submit such issue to the jury.'"

Measured by this rule of law, the evidence certainly required the submission of the issue, and we find the testimony sufficient to support the verdict. On like testimony the jury found, in answer to issue No. 2, that "it would have been possible for the defendant's truck driver on the occasion in question to have parked said truck off the paved portion of the highway."

Point 30 is an attack on the submission of issue No. 5 which was: "Do you find from a preponderance of the evidence that the defendant's driver parked defendant's truck on the paved portion of the highway just prior to the collision in question, without leaving as much as 15 feet of clearance on the main traveled portion of said highway for other vehicles to pass?" This was answered in the affirmative, and said point insists that the court erred in submitting the issue "because defendant's truck driver had not parked his truck but merely stopped it because of an obstruction ahead to allow approaching motor vehicles to pass." This point is presented as "germane to appellant's *objection 2* to the court's charge * * * and to *ground 39* of its motion for new trial." (Italics ours)

Does objection 2 or ground 39 furnish basis for point 30? An inspection of ground 39, motion for new trial, discloses that the appellant there insists that the court erred in submitting said issue "because the court *assumed* that the driver of defendant's truck had 'parked the truck on the paved portion of the highway,' and was charged [a charge] on the *weight of the evidence*." (Italics ours)

■ When we pass from this ground (39) of said motion to the appellant's exceptions or objections to the charge before same was read to the jury, we find that appellant failed to make any such exception in a timely manner to the charge or issue submitted. No question of "assumed" fact or comment "on the weight of the evidence" was raised. In that situation the objection

was waived and the point may not be raised for the first time in the appellate court. City of Abilene v. Moore, Tex.Civ.App., 12 S.W.2d 604; 3 Tex.Jur. p. 202, sec. 137, 138; 41 Tex.Jur. p. 1061, sec. 250 et seq; Speer's Special Issues, p. 390, sec. 271.

■ We now pass from any further consideration of ground 39, motion for new trial, to paragraph "2" of the appellant's exceptions to the court's charge to ascertain if it furnishes sufficient basis for point 30. We find from that paragraph that the only exception taken to the issue was: "Defendant objects to the submission to the jury of issue No. 5 in the charge of the court because it is *incomplete,* and there *should be added* to it after the final word 'pass' the following: 'When a clear view of said vehicle may not be obtained from a distance of 200 feet from each direction of said highway' as under sec. 10 of art. 827a of the Penal Code of Texas [Vernon's Ann.P.C.], a driver of a motor vehicle is required to leave an unobstructed width of not less than 15 feet only when a clear view of the stopped vehicle may not be obtained from a distance of 200 feet in each direction upon such highway." (Italics ours)

The gist of this attack—and the only one made by the exception—is one of incompleteness. The appellant, in effect, recognizes the materiality or appropriateness of the issue as such and by its exception suggests that its only vice is that "it is incomplete and there should be [something] added to it."

Doubtless the trial court correctly refused to make the suggested addition to the issue, but it is unnecessary to pass on that question since that is not the attack made on the issue in this court. Point (30) does not complain of any element of incompleteness suggested by the exception, but asserts that the court erred in submitting the issue "because the defendant's truck driver had not parked his truck but merely stopped because of an obstruction ahead to allow approaching motor vehicles to pass."

Again, it must be borne in mind that the evidence does not conclusively show, as contended by appellant, (1) that there was any obstruction on the paved portion of the highway traveled by the appellant's truck, (2) that the truck driver was unable with reasonable safety to proceed, conceding the bumper corner of the gasoline truck projected slightly over the pavement, or (3) that it was necessary for the truck driv-

er to stop to permit approaching cars to pass. If the court had accepted the appellant's contentions on these grounds he would have accepted without qualification (1) that there was such obstruction and (2) that it was necessary to stop to permit approaching cars to pass. As pointed out in the discussion of point 28, these matters were not undisputed.

In fact, appellant's first witness, M. B. Thomas, a highway patrolman, identified a map or drawing (defendant's exhibit 7) showing position of Safeway's truck, Chrysler car and gasoline truck and tank. Said plat indicated the corner of the gasoline truck as protruding slightly (distance not given) over the west edge of the pavement. In substance, he further testified the pavement or well traveled portion of the highway was 20 feet wide, that the van (Safeway's) was 8 feet wide, or 96 inches (maximum) and in answer to other direct questions, he responded:

"Q. Even if that (gasoline) truck had been sticking out there 20 inches he would still have had plenty of room to pass and stay on the pavement? A. Far as I know, he would. * * *

"Q. You would have had plenty of room to have stayed on the east side of that black line and go by? A. Yes. (Safeway truck traveling toward south on west half of pavement) * * *

"Q. In other words, there was no part of that traffic that was blocked by that [gasoline] truck over there, was there? A. No sir." (Explanatory parenthetical expressions ours)

The conflicting nature of the testimony generally has been set forth, as well as the failure of appellant to lay a predicate in the trial court for the point here sought to be presented. If the exception made (paragraph 2) or the point thus preserved had any merit originally, it was abandoned.

In the light of the pleadings or any proper grouping of the allegations thereof, as well as the propositions urged, we do not think that any discussion or technical distinction between the words "stopping" and "parking" is called for by this record. Their meaning is simple and clearly reflected by the allegations. "Parking" and "stopping" were used interchangeably without distinction or differentiation. The sense in which they are used is properly recognized in the issues, and the trial court did not in the face of any proper objection ignore any legitimate distinction between the words.

Omitting any lengthy excerpts from the pleadings, the different grounds of negligence employing said words are in part or in whole as follows:

"Plaintiffs say that the defendant's driver stopped the truck in violation of the law in that the truck was *parked or stopped* on the paved portion of the main traveled portion of the highway and on the side of the same on which plaintiffs' automobile was driving. That it would have been possible on the occasion in question for the said truck to have parked off the main traveled portion of the highway or sufficient distance off the main traveled portion thereof to have permitted other vehicles to have passed in safety * * *.

"The defendant was negligent in stopping its truck in the main traveled portion of the highway on the occasion in question and was negligent in so stopping its truck as to fail to leave 15 feet clearance space on the main traveled portion of said highway in which other vehicles might pass * * *.

"In this connection, plaintiffs allege that the defendant's driver on the occasion in question knew that there was a car approaching him from the rear at the time he stopped and it was negligence on the part of the defendant to have stopped said truck at all under the conditions of weather prevailing at that time with the knowledge that there was a car following at the back of his truck * * *.

"That the said act of *stopping* the truck was negligence and the defendant was negligent in all the particulars above alleged, and that each and all of said acts of omission and commission above alleged were negligence upon the part of the defendant and said driver and each and all of said acts of negligence was the direct and proximate cause of the injury and death of the said Lucille Webb."

From these brief extracts, we think that the words "stopping" and "parking", as used, did not mislead the litigants, the jurors, or the trial court, and that any refinement on the definition or any technical distinction between said words would, under the record here presented, be calculated to confuse and lose sight of the real issues of the lawsuit.

As stated, there is testimony that no obstruction was present on or projecting over

the paved portion of the highway which would in any measure justify or afford the appellant's truck driver any reason or excuse for stopping or parking his truck immediately prior to the collision. At least, the evidence is conflicting as to whether any such justification existed.

 Stated somewhat differently, viewing the record as a whole, the same discloses that although the trial court, by issues 2 to 7, inclusive, submitted the issue of negligently parking the truck on the paved portion of highway, and the appellant's failure to leave 15 feet clearance for other vehicles to pass, nevertheless the appellant made no objections to the charge or list of issues in any way pointing out any distinction or difference between the act of parking the truck or the act of stopping the truck. Such objections as were made only sought to have the court complete in certain respects some of said issues or add something to the same. Any such objection or exception to the form and manner of submitting said issues would be waived in the absence of specific objections made to the charge at the proper time. Isbell v. Lennox, 116 Tex. 522, 295 S.W. 920; International-G. N. Ry. Co. v. Acker, Tex.Civ.App., 128 S.W.2d 506. See authorities under discussion of point 26. Points 28 and 30 are overruled. Neither point makes any attempt to raise after trial the question of sufficiency of evidence. Hall Music Co. v. Robinson, 117 Tex. 261, 1 S.W.2d 857.

 By point 44 the appellant insists that the negative answer of the jury to special issue No. 36 that "S. B. Roberts was not driving at a dangerous rate of speed" was wholly unsupported by and contrary to the evidence. As we appraise the evidence, there was a conflict on that issue. Reasonable minds could well differ upon the effect to be given the testimony. Believing that the verdict of the jury on that issue is supported by sufficient testimony, the point is overruled. Furthermore, the conviction of Roberts of negligence would not constitute a finding of contributory negligence of deceased, unless defendant further showed deceased's right and power to control the driver, Roberts. Harper v. Texas & P. Ry. Co., Tex.Civ. App., 146 S.W.2d 426.

We now consider points 45 and 46.

"Special issue No. 39 was: 'From a preponderance of the evidence, what sum of money if paid now in cash do you find would fairly and reasonably compensate plaintiffs C. R. Webb and Mrs. Ruth Webb for the pecuniary benefits, if any, which they had a reasonable expectation of receiving from the deceased had she lived?' The damages found was $5,000. Concerning the submission of this issue, two closely related, yet different, questions are presented in points 45 and 46. One question may be said to involve a contention to the effect that there was no evidence to support a finding of damages in any amount; and the other that the finding of damages in the sum of $5,000 was excessive. Both may be considered together.

 "The decision of the jury upon some issues, in particular cases, is more a matter of the jury's opinion than in others. In the death statute (R.S.1925, arts. 4671 to 4678, inclusive [Vernon's Ann.Civ.St. arts. 4671–4678]) creating the cause of action herein involved, it is expressly recognized that the damages are to be ascertained by the jury as a matter of their opinion. Says the statute: 'The jury may give such damages as *they think* proportionate to the injury resulting from such death. * * *' (Italics ours) Art. 4677. Under authority of the provision quoted, the Supreme Court long ago sustained a jury charge as follows: 'And the value of the child's services during the period of her minority * * * is to be ascertained by you as best you can from your own judgment, common sense, and sound discretion, and the evidence before you.' Brunswig v. White, 70 Tex. 504, 8 S.W. 85, 87. The court in its opinion quoted from its earlier opinion in International & G. N. Ry. Co. v. Kindred, 57 Tex. 491, 503, as follows: 'the evidence in this class of cases, from the nature of things, cannot furnish the measure of damages with that certainty and accuracy with which it may be done in other cases; hence the necessity and wisdom of leaving the question of damages to the discretion of the jury, which will be revised by the court; but their finding will not be set aside, unless it be made to appear that such discretion has been abused.' As said in another case, 'Absolute accuracy cannot be attained, and hence the amount must be left to the sound discretion and common sense of the jury.' Houston City St. Ry. Co. v. Sciacca, 80 Tex. 350, 355, 16 S.W. 31, 33. From the authorities this generalization seems to be warranted namely, that the function of evidence essential

876

to support such an issue, in a case like this, is to provide the foundation or basis for the opinion of the jury.

■ "There was some evidence, which we deem it unnecessary to detail, sufficient to support the jury's opinion that plaintiffs had a reasonable expectation of receiving some benefits from their deceased daughter had she lived. As to the amount of damages awarded, for us to say that $5,000 is excessive would be a mere substitution of our opinion for the opinion of the jury to whom the law has confided primarily the decision of that question. We cannot say, as it would be necessary to do, that the said award of $5,000 is clearly wrong."

Upon the question of excessiveness, as well as the right of recovery we cite the opinion of this court in International-G. N. Ry. Co. v. Acker, Tex.Civ.App., 128 S.W.2d 506, point 41, et seq. The numerous authorities there cited will disclose that the amount awarded in this case is not out of line with judgments that have been approved under facts of substantially the same import.

Point 47 is overruled for the following reasons:

■ "On voir dire, each of the jurors— one being P. C. Jones—was asked if he was related, in any way, by blood or marriage to Dallas Scarborough, appellees', leading attorney. The juror, P. C. Jones, answered 'no.' The point is that the court erred in overruling appellant's motion for new trial for the reason (as contended) that it had been subsequently discovered that said juror's answer was false, in that said attorney's sister had married one W. J. Farmer, and W. J. Farmer's sister had married said juror. There was, of course, no blood relationship. A man is only related by marriage to his wife's blood relatives. By this test, the attorney was not related by marriage to Farmer; most certainly not to Farmer's sister, and still more certainly not to Farmer's sister's husband—the juror P. C. Jones. By the same test, said juror was related by marriage to Farmer, since Farmer was a blood relative to the juror's wife, but Scarborough's sister was not her blood relative, and most certainly Scarborough's sister's brother, the attorney, was not. If the attorney and juror had married sisters, neither husband being a blood relative of the other or of the other's wife, they would not have been related by blood or marriage, and the juror, if he had been asked whether he was related in any way by blood or marriage to the attorney could only have answered truthfully that he was not."

We overrule point 55 as being without merit.

Further, it is asserted by this point that "the court erred in submitting to the jury special issue No. 3 because the court assumed without proof that the defendant's driver had 'parked' its truck when he had merely stopped it momentarily * * *." This point is presented as "germane to ground 37 of defendant's motion for new trial." Ground 37 complains that the court erred in submitting issue 3 "because the court *assumed* that the driver of the defendant's truck had 'parked the truck on the paved portion of the highway' and was *charged on the weight of the evidence* because said truck driver had not parked said truck * * *." (Italics ours)

An inspection of the record discloses that no such exception or objection was made to the submission of the issue before the same was read to the jury. As above held, such objection to a charge or issue, which was not timely presented to the court, is waived. Isbell v. Lennox, Tex. Civ.App., 224 S.W. 524; Gulf, T. & W. Ry. Co. v. Dickey, 108 Tex. 126, 187 S.W. 184; Electric Express & Baggage Co. v. Ablon, 110 Tex. 235, 218 S.W. 1030; Ft. Worth & D. C. Ry. Co. v. Houston, 111 Tex. 324, 234 S.W. 385; Gaither v. Gaither, Tex.Civ. App., 14 S.W.2d 286; Indemnity Ins. Co. v. Sparra, Tex.Civ.App., 57 S.W.2d 892; City of Abilene v. Moore, Tex.Civ.App., 12 S.W. 2d 604.

For the reasons assigned, the judgment of the trial court is affirmed.

FUNDERBURK, Justice (dissenting).

The writer has found it impossible to discuss the questions, deemed to merit discussion, in such way as to be understandable without stating the six different grounds of recovery (or if a less number, one or more repetitions) constituting the alleged cause of action. Such grounds of recovery may be stated as follows:

(1) That "the driver of the defendant's truck stopped said truck on the paved part of the highway, out of the limits of any city or town. That it was night time and the weather was misty and damp and the truck had no tail lights and there was no reflector on the truck and nothing to give

warning that it had stopped on the highway."

(2) That "defendant stopped the truck in violation of law in that the truck was parked or stopped on the paved and the main traveled portion of the highway and on the side of same on which plaintiffs' automobile was driving. That it would have been possible, on the occasion in question, for said truck to have parked off the said main traveled portion of the highway or [sic] sufficient distance off the main traveled portion thereof to have permitted other vehicles to have passed in safety, all in violation of sec. 10, art. 827a of the Penal Code [Vernon's Ann.P.C.]."

(3) That "the driver of said truck also violated said penal statute in that the said driver parked his truck without leaving as much as 15 feet distance for other vehicles, in which to pass on the main traveled portion of the said highway * * * that the paved and main traveled portion of the highway in question at the point in question was 20 feet wide and that the defendant's truck was parked approximately 1½ feet to the right of the center line of said highway leaving only 11½ feet distance in which vehicles proceeding in either direction might pass."

(4) That "defendant was negligent * * * in not having lights on the rear end of its truck."

(5) That "defendant * * * was negligent in stopping the truck without having suitable and visible reflectors on said truck."

(6) That "the defendant's driver, on the occasion in question, knew that there was a car approaching him from the rear, at the time that he stopped, and it was negligence on the part of said defendant to have stopped said truck at all under the conditions of weather prevailing at that time, with the knowledge that there was a car following at the back of his truck."

These grounds of recovery may conveniently be referred to by numbers as above.

Of the ten points mentioned in the majority opinion, which are deemed to merit discussion, I shall reserve to the last points 1, 2, and 3, which, as stated in the majority opinion, really involve but one question, namely, the want of evidence to show negligence.

In my opinion, points 28 and 30 should be sustained. Point 28 is to the effect that the court erred in submitting special issue No. 3 calling for a finding of whether the "act of defendant's truck driver in parking the truck on the paved portion of the highway was negligence" because the undisputed evidence showed that the defendant's truck driver did not park its truck on said highway, but merely stopped momentarily.

Point 30 is to the effect that the court erred in submitting special issue No. 5 calling for a finding of whether "defendant's truck driver parked defendant's truck on the paved portion of the highway just prior to the collision in question, without leaving as much as 15 feet clearance on the main traveled portion of said highway for other vehicles to pass" because defendant's truck driver had not parked his truck, but merely stopped it. It is true, defendant did not object to the submission of said issues upon such grounds, but the alleged errors were urged after the verdict as grounds for a new trial. The action of the court, the correctness of which is challenged, is that of overruling defendant's motion for new trial. The errors would no doubt be waived because of the absence of objections, but for a special provision of Rule 279. In that Rule it is provided that "A claim that the evidence was insufficient to warrant the submission of any issue may be made for the first time after verdict." The claims under consideration are, in substance and effect, claims made after verdict to the effect that the evidence was insufficient to warrant submission of the issues.

In grounds of recovery 2 and 3, to which the above issues related, a common element, essential to either, was the fact that the defendant's driver *parked* the truck on the highway. The duty involved in each of such grounds of recovery is one created by statute (Vernon's Ann.P.C. art. 827a). The subject matter of the statute is "parking". The word "park" is new, or, rather, an old word is used in the statute with a new and additional meaning. It is not defined by statute, and hence is to be understood as expressing the common or ordinary meaning of the word. Webster's International Dictionary defines it as follows: "2. To stop and keep (a vehicle esp. a motor vehicle) standing for a time on a public way, or to leave temporarily on a public way or in an open space, esp. in a space assigned for the occupancy of a number of automobiles. * * * 3. Hence, to set and leave in a public place, as he parked

his bag at the club; also, to settle or establish esp. for a considerable time; as to park oneself on the veranda. Slang U.S."

It thus appears that "park" and "stop" are not synonymous. Stopping is but one element of parking, or, perhaps, more accurately speaking, the act of stopping initiates or marks the beginning of the more comprehensive act of parking. If, for example, the operator of a motor vehicle merely stops same to await the change of a red traffic light to green; if he stops at a highway intersection only in order to yield the right of way to another motorist, he, in our opinion, has not parked. Under the law of the road (P.C. art. 801(L) if a motorist approaching from the rear and intending to pass a train, interurban or street car, stopped to receive or discharge passengers, he must come to a "full stop"; but he is not required to park. If, harking back to "horse and buggy days", the rider or driver of a frightened horse or horses gives the signal to the operator of a motor vehicle which, by provision of the statute, imposes upon such driver the duty not to proceed further (P.C. Art. 801(I), that, in our view, does not impose upon him the duty to park the motor vehicle. If a motorist finds himself blinded by lights, dust or storm, or any temporary or momentary condition disabling him from seeing that he may proceed safely and stops not with a view to leaving his car standing for any considerable time, he has not parked.

In my opinion, point 44 should be sustained. It presents a contention to the effect that the evidence established conclusively that S. B. Roberts was, under the existing circumstances, driving at a dangerous rate of speed, and that, therefore, the verdict of the jury being to the contrary "was wholly unsupported by and contrary to the evidence." It was shown without dispute that at the time of the collision it was dark and raining and had been raining, off and on, for two or three days; that the highway was wet and slippery; that the windshield wiper was running; that as the Roberts car approached the place of collision at least one other car, with headlights on, was approaching from the other direction; that Roberts had subnormal vision. As a witness for plaintiffs he testified that he was watching because "I have to watch, I haven't an awful lot of vision." It was further shown, without dispute, that defendant's truck van was nearly 8 feet wide and of undisclosed height, but described by Roberts as "a big old van truck setting right in the road"; and that the van had reflectors on the rear end. Roberts, a witness for plaintiffs, when asked "How close were you to this truck when you discovered it" answered, "Oh, 30 or 40 feet." Miss Knight, another occupant of the Roberts' car and a witness for plaintiffs testified she was looking down the road, saw no lights, and when she saw defendant's truck "we were close enough to see by that time it [the collision] was unavoidable." "You couldn't do anything after you saw it?" she was asked, and answered "No." She said "I saw the truck as soon as it was possible" and that "then it was too late to avoid hitting it." Roberts, being asked, "Was there any way for you to avoid the collision after you saw it" answered "Well, I don't think so. I just don't believe there would be a way in the world to avoid it. There was another car coming down the road. It was a little too fast to do an awful lot of thinking, and when you are just that close to anything there is not much time to do an awful lot of thinking." Further asked whether if he had thrown on his hydraulic brakes his car would have stopped in 20 feet, he said "It would not, because a car won't stop that quick on dry ground." Being reminded of the car coming from the other way, he was asked, "You waited until that car got past you and then tried to turn to the left?" to which he answered, "Judge, there is no time to wait. With a car making 30 to 40 miles an hour and only got 30 feet to go, there isn't any time to wait."

Such is an outline of the circumstances under which the following testimony should be considered. Roberts, as a witness for plaintiffs, when asked "What speed were you driving" answered "I would say between 35 and 40." Miss Knight, the other occupant of the car, answered the same question "Between 30 and 40—we never got over 40." It seems to me that unprejudiced, unbiased minds cannot reasonably differ upon the proposition that it was dangerous for the driver of an automobile, with limited vision, driving in the dark, through rain, with windshield wiper running, meeting the lights of an approaching car from the other direction and unable to see a large truck van in the road ahead with at least reflectors on it further than 30 or 40 feet away, to drive at a speed of 30 to 40 miles an hour under such conditions.

I concur in the view that point 55 must be overruled on the ground that the error was waived by the failure to object to the submission of special issue 3 on the ground that the issue as it was stated assumed that the truck had been parked on the highway. Unlike the errors presented in points 28 and 30 the one here complained of goes to the manner and form of the submission and is waived by absence of objection, not being within the aforesaid special provision of Rule 279.

As already said, points 1, 2, and 3 really present but the single question, whether there was an absence of any evidence, in essential particulars, to raise any issue of negligence on the part of defendant's truck driver. A number of different factors complicate this question. The scope of the inquiry is, of course, generally defined and limited by plaintiffs' pleadings. Here it is further limited to some extent by the part of the verdict of the jury which was in favor of defendant. Other limitations result from collateral facts conclusively established by the evidence.

Of the grounds of recovery above listed as a total of six, it is doubtful if No. 5 should be regarded as a ground of recovery separate from, and additional to, No. 1. If by reason of the adjectives "suitable" and "visible" as modifying the word "reflectors" and the substitution of reflectors (plural) for "reflector" (singular), it should be so regarded, then it is deemed unimportant anyway because there was no issue raised by the evidence or submitted to the jury regarding the absence of reflectors or their unsuitableness or lack of visibility. Hence, ground of recovery 5 may be dismissed from further consideration.

Two essential elements in ground of recovery 1 were (a) stopping the truck, (b) without tail lights. The alleged negligence involved was determined by the jury in its answer to special issue No. 8 in favor of defendant. Hence that ground of recovery, except for its bearing on ground 4, next to be considered, may be eliminated from further consideration.

That defendant's driver stopped the truck before the collision, was a fact alleged by plaintiffs and admitted by defendant. Therefore, special issue No. 8 inquiring whether "defendant's truck driver stopped defendant's truck on the highway just prior to the collision in question, without having lights burning on the rear end of said truck" really only called for the jury to decide whether the truck was without rear lights. The verdict upon this issue being to the effect that the truck was not without rear lights, it results that ground of recovery 4 may also be dismissed from further consideration.

Grounds 2 and 3, for reasons already discussed, may be disposed of by merely reiterating that there was no evidence to raise an issue of the alleged fact that defendant's driver parked the truck on the highway. Plaintiffs had the burden of proving that defendant's driver parked the truck. They produced no evidence to show that the truck had been standing more than three or four seconds. If, as the only evidence shows, the colliding car was 75 yards behind when the truck stopped, and was going 40 miles an hour, then the time was 3.8 seconds. Considering the distinction hereinbefore made between parking and stopping, there was, in my opinion, no evidence to raise an issue that the car was parked in the sense necessary to establish liability under grounds 2 or 3.

If these conclusions be correct, then the task in hand is reduced to that of determining whether there was evidence to raise the issue of defendant's negligence as charged in ground of recovery No. 6. This ground was submitted in Special Issues 1, 1–A and 39. Special issue No. 1 was found to the effect that it was negligence for the defendant's truck driver to stop his truck at the time and on the occasion in question; special issue 1–A to the effect that such negligence was the proximate cause of the collision; and special issue No. 39 that the damages suffered was $5,000.

In stating special issue No. 1 some elements of the negligence pleaded were omitted, namely, the elements that "defendant's truck driver knew that there was a car approaching him from the rear at the time he stopped" and "the conditions of weather prevailing at that time." Their omission is no doubt accounted for by the fact that they were conclusively shown by the evidence.

The situation now under consideration should be carefully distinguished from the familiar one of two motor vehicles traveling in the same direction, one close behind the other and the foremost stopping too suddenly, its driver being able to signal his intention to stop, but failing to do so. That kind of situation is governed by a provision of the Law of the Road (P.C. art. 801(K) which imposes a duty upon a motorist "be-

fore stopping" to "see first that there is sufficient space for such movement to be made in safety" and "if the movement or operation of other vehicles may reasonably be affected by such * * * stopping" he "shall give plainly visible or audible signal to the person operating, driving or in charge of such vehicle of his intentions to * * * stop." Manifestly, that statute can have no application to this case. It can have no application to the driver of any motor vehicle when such motor vehicle has never been seen while in motion by the driver of the approaching car from the rear. The statutory duty of a driver to signal before stopping and the co-relative right of the motorist following in the rear to rely, to some extent at least, upon the signal being given, enables the latter to follow at a closer distance than otherwise he could do without being guilty of negligence. In the instant case, there could have been no reliance upon the signal of an intention to stop, since the truck was already stopped when first seen. No action of the driver or occupants of the colliding car could have been induced by reliance upon a stop-signal being given. Under the undisputed evidence it was the bare fact of the presence of the truck standing still on the highway and not any act of stopping same suddenly or otherwise which provided the obstruction into which the car in which deceased was riding crashed.

It is to be observed that this 6th ground of recovery did not include as one of its elements the stopping of the truck, without signaling the driver's intention to stop. Evidently it was recognized that no effective signals could have been given. It is, no doubt, the theory of plaintiffs that the inability of defendant's driver to give such signals effectively gave rise to a duty of the driver to continue driving without stopping.

It may be well at this point to inquire as to the nature of the duty which was owing by defendant's truck driver to plaintiffs' deceased daughter. No duty, no actionable negligence, may well be regarded as a maxim of the law of negligence. Independent Eastern Torpedo Co. v. Carter, Tex.Civ.App., 131 S.W.2d 125, and authorities therein cited. If, as alleged as part of the 6th ground of recovery, it was negligence under the circumstances stated to have "stopped said truck at all", what was the duty which was violated by stopping? Whatever the duty was, or however it may be stated, it is certain that it would have been discharged, if it existed, by the truck driver going forward without stopping. For present purposes, therefore, we may consider the duty involved as being concretely the duty not to stop, which may otherwise be stated as the duty to continue driving forward upon the highway. The facts alleged to imply the duty (no duty being alleged expressly) are that the driver knew that there was a car approaching him from the rear, at the time he stopped, and "the conditions of weather prevailing at that time." In the final analysis, the conclusion is inescapable that the wrong, if any, of which defendant's truck driver has been adjudged guilty and defendant held liable to pay damages, was failure to outrun the automobile coming behind him.[1]

The record of the evidence in this case, appraised in the light of the pleadings, the verdict of the jury and the other relevant factors, is strongly impressive of the fact that defendant has been adjudged liable for damages when the only thing regarded as wrong, of which there is any evidence to show, was an excess of caution on the part of its truck driver.

Plaintiffs had the burden of proof upon the issue that the stopping of the truck

---

[1] In all the 56 points in defendant's brief, there is not one making a contention to the effect that there was no evidence—or that the evidence was conclusive to the contrary—that stopping the truck was a proximate cause of the collision. The evidence showed conclusively that the act of stopping the truck was not a cause of the collision, and, since a proximate cause must first of all be a cause, there was, therefore, no evidence that the act of stopping the truck was a proximate cause of the collision. To make this clear, let us suppose the truck, instead of stopping, had slowed down to 3 miles per hour. Surely that would have involved no wrong; and yet all the evidence which may be claimed to show that stopping was a cause of the collision would be equally as effective to show that the collision would have occurred just the same, caused by running so slowly as 3 miles per hour. In the sense it was contended that stopping the truck was the proximate cause of the collision, the real cause was the presence of the truck on the road. There certainly could be no valid contention that defendant did not have the right to have the truck on the road. However, our jurisdiction to determine this question has not been invoked.

was negligence. In addition to the facts hereinbefore detailed as being conclusively shown by the evidence is the fact that a gasoline tank truck (truck with tank altogether about 40 feet in length) was stuck in the mud on the right hand side of the road in a jack-knifed position; that is to say, the tank was approximately at right angles to the highway; and the truck parallel thereto, headed north, with head lights shining. Another car was stalled on the same side of the highway to the south. Defendant's truck driver stopped his truck 4 or 5 feet short of the point even with the end of the gasoline tank; and before the first motor vehicle which he was meeting had passed the collision occurred.

There was a conflict in the evidence as to whether the hind end of the gasoline tank projected to any extent over the 20 foot paved portion of the highway. There was evidence to support a finding that it projected a few inches, and other evidence that it was clear of the pavement from 18 inches to 3 feet. It is this conflict in the evidence which is relied on by plaintiffs to show that there was evidence sufficient to raise the issue of negligence in question. In my opinion, that is a false issue. Under the undisputed evidence the inference that the truck driver stopped because it reasonably appeared to him to be unsafe not to stop is more reasonable than the inference that he stopped for some other reason, being at the time able to see and seeing that he could safely proceed before the oncoming cars had passed.

It is believed to be a settled and foreclosed question that evidence of such character is insufficient to raise an issue to be submitted to a jury. Houston & T. C. Ry. Co. v. Harris, 103 Tex. 422, 128 S.W. 897;

Texas Pacific Fidelity & Surety Co. v. Hall, Tex.Civ.App., 101 S.W.2d 1050, and authorities therein cited, and Safety Cas. Co. v. Walls, Tex.Civ.App., 117 S.W.2d 879.

With the evidence in such condition, it was wholly wanting in at least one respect essential to support a finding of negligence on the part of the truck driver. Further, evidence having the effect of showing that defendant's driver could see and did see that there was no obstruction on his half of the road was, I think, necessary. Instead of such evidence was the evidence of conditions under which the driver of the car behind could not see defendant's truck a greater distance than 30 or 40 feet; and could not see the facing lights on the stalled tank truck off the pavement to his right.

Defendant's truck being 8 feet wide, the driver had a narrow play of only 2 feet to get off the pavement to his right in the mud, or over on the other half of the 20 foot pavement in the track of approaching cars to his left. In the face of oncoming lights, through the rain, it would appear to be a matter of physical impossibility for the driver to have seen clearly the real situation, such as measurements in the light of the next day may have shown. The approaching lights of the automobiles on the driver's left and the lights of the stalled tank truck to his right, if not partly projecting on the pavement, certainly near to it and manifesting road trouble of some kind, called loudly for the exercise of caution. The driver exercised caution by stopping. Because the plaintiffs raised an issue of fact that by measurements made in the light of day the truck driver could have proceeded without danger, in my opinion, does not raise an issue of the negligence alleged.