**WALGREEN, INC., Appellant,**

v.

**Eugene KNATT et ux., Appellees.**

**No. 7545.**

Court of Civil Appeals of Texas, Beaumont.

Jan. 10, 1974.

Remittitur Filed Jan. 21, 1974.

Dale Dowell, Rienstra, Rienstra & Dowell, Beaumont, for appellant.

Howard L. Nations, Houston, for appellees.

STEPHENSON, Justice.

This is a suit instituted by Eugene Knatt and wife, Betty Knatt, for damages under the Texas survival statute, Art. 5525, Vernon's Ann.Civ.St. Negligence is alleged on the part of a pharmacist, employed by defendant, Walgreen, Inc., in dispensing a prescription for their infant son. Trial was by jury and judgment was rendered for plaintiffs upon the verdict. The parties will be referred to here as they were in the trial court.

The jury found the amount of damages to be $22,500, and the real controversy on appeal is whether that amount of money is excessive. The only element of damages submitted to and considered by the jury was for past physical pain and suffering. This child was nine months old when the parents began to administer the prescription in question. He was admitted to the

hospital seven days later and then discharged nine days after admission. It is conceded that there was no evidence of pain and suffering after the child was discharged. This child died in surgery about a year and three months later, but no effort was made to connect his death with this cause of action. The jury found defendant negligent in filling and dispensing the wrong prescription, and that such negligence was the proximate cause of the damages. No challenge is made of those jury findings.

This court had occasion to consider and write at length on the question of appellate review of damages for pain and suffering in Collins v. Gladden, 466 S.W.2d 629, (Tex.Civ.App., Beaumont, 1971, error ref., n. r. e.). For the sake of brevity, we will not restate the rules we must follow in this review, but refer to that case containing the majority and concurring opinions for the rules and cases there collated.

Mrs. Knatt began to give her son this prescription the day it was filled by defendant, and continued for the next seven days. The child began to vomit about an hour after he had been given the first pill. The second day he continued to vomit and started to have diarrhea. He was not as active as before; and, during the first seven days in addition to the vomiting and diarrhea, he was crying and irritable. He also seemed to have trouble breathing. Mrs. Knatt took the baby to the doctor, and he told her to take the baby to the hospital, which she did immediately. The child was placed in intensive care where he had "a lot of tubes and wires connected to him." On the fifth day he was moved to a room, at which time he was weak and irritable. Mrs. Knatt took him home on the ninth day after his admission.

The critical time was the seven hour period from about 5 p. m. until midnight the first day this child was admitted to the hospital. He experienced fifteen cardiac arrests during that period of time. As treatment for those cardiac arrests, he was given three cardiac massages and twelve electrical defibrillations. The external heart massage was described as painful, and as a procedure, involves hard pushing by the doctor on the child's chest in order to create a pump action. An endotracheal tube was placed down the child's throat, through the larynx and into the lung. In order to administer the defibrillation process, it was necessary to connect a pacemaker to his heart. This was done by making a one inch incision in the groin and then passing a catheter wire through the vein wall up through the major vein on the left side into the right ventrical of the heart. An electrical shock was then sent into his heart. The defibrillation process is accomplished by placing a large electrical paddle over the chest in front of the heart and another electrical paddle on the back. This process was also described as painful. There is no evidence that either a local or a general anesthesia was administered at any time or that the child was ever given pain killing drugs.

Following a careful consideration of the record before us, we have concluded this verdict is excessive by $10,000. We are well aware of the difficulty of separating the only element of damages that could be considered (physical pain and suffering) from those not included, such as mental suffering and anxiety present in a case involving an adult. The fact that this infant died from a congenital heart problem some fifteen months after this episode cannot be considered, and punitive damages are not in this case. The only physical pain for which there can be a recovery is that which the child consciously experienced. There is little direct testimony in the record before us on the subject at hand. The only attending doctor who testified as to the seven hours referred to gave this answer:

"Based on my experience with older people, the only pain in cardiac arrest is the pain afterwards, the sore chest and

sore muscles. Of course, if you have intubating, the patient will have a sore throat.

"It's very, very hard to determine the pain in a baby like this, the fright and a few other things. I cannot make any comments on that."

If within ten days plaintiffs will remit the sum of $10,000, the judgment will be reformed and affirmed; otherwise, it will be reversed and remanded.