J. LANDRETH and Paula Landreth, d/b/a Happy Acres Nursery, and Happy Acres Nursery, Appellants,

v.

James REED and Elizabeth Reed, Individually and as next friend of Melissa Reed, a minor, Appellees.

No. 8563.

Court of Civil Appeals of Texas, Texarkana.

Aug. 22, 1978.

Howard Waldrop, Atchley, Russell, Waldrop & Hlavinka, Texarkana, for appellants.

Harry B. Friedman, Harkness, Friedman, Kusin & Hooper, Texarkana, for appellees.

CORNELIUS, Chief Justice.

While attending a day nursery operated by Mrs. Paula Landreth, fourteen month old Kecia Reed fell into the swimming pool and drowned. Her parents, Mr. and Mrs. James Reed, individually and as next friend of Kecia's infant sister, Melissa, filed suit against Mr. and Mrs. Landreth for dam-ages. Based upon jury findings of negligence, proximate cause and damages, the district court entered judgment against Mr. and Mrs. Landreth awarding Mr. and Mrs. Reed $25,000.00 for their loss, together with $2,940.00 for funeral and medical expenses, the estate of Kecia $65,000.00 for the conscious pain and suffering she experienced, and Melissa the sum of $25,000.00 for injuries she received as a result of witnessing the death of her sister. Mr. and Mrs. Landreth do not contest the jury findings of negligence or proximate cause, but base their appeal upon ten points of error which complain of the action of the district court in allowing a non-medical expert witness to testify that Melissa suffered a physical injury, the propriety of Melissa's recovery of damages for having witnessed the death, several alleged acts of jury misconduct, and the excessiveness of the awards for pain and suffering and for pecuniary loss on the part of the child's parents.

I

Mr. and Mrs. Reed produced Dr. Brunell, a clinical psychologist, as a witness to the fact that Melissa had suffered a physical injury as a result of the shock and emotional trauma of having witnessed the efforts to revive Kecia immediately after she was removed from the pool. The gist of Dr. Brunell's testimony was that, in addition to and as a result of the emotional trauma, Melissa experienced hyperactivity, distractability, loss of weight, extreme nervousness and difficulty in sleeping. Mr. and Mrs. Landreth contend that because Dr. Brunell was not a medical doctor, she should have been permitted to testify only as to Melissa's mental condition, and not that such condition manifested itself by physical symptoms or disability.

■ We think the court was correct in allowing Dr. Brunell's testimony. As a trained expert in behavioral psychology, qualified both by a Ph.D. in Clinical Psychology and several years of experience, she was undoubtedly competent to testify as to Melissa's mental condition and stability.

*Hogan v. State,* 496 S.W.2d 594 (Tex.Crim. App.1973); *Doherty v. Dean,* 337 S.W.2d 153 (Tex.Civ.App. Austin 1960, no writ); *Watson v. State,* 161 Tex.Cr.R. 5, 273 S.W.2d 879 (1954). And it has been increasingly evident in recent years that in many cases it is difficult, if not impossible, to distinguish between strictly mental and strictly physical ailments, because they each may manifest themselves by symptoms relating to the other. In this case Dr. Brunell did not attempt to testify concerning infectious or idiopathic physical diseases, but only that Melissa's physical symptoms, which even an observant layman would be permitted to relate, were common results in a child her age, from the kind of mental and emotional shock she experienced. To prohibit a trained clinical psychologist from so testifying would be to ignore the realities of present medical and psychological practice. See *Simmons v. Mullen,* 231 Pa.Super. 199, 331 A.2d 892 (1974).

## II

Melissa's recovery is challenged on the ground that, as she neither received a physical impact as a result of the negligent act, nor was she in the zone of danger created by that act, the allowance of recovery for injuries resulting from her shock would be to extend the liability for one's negligent act beyond reasonable and permissible limits. The problem of whether to allow recovery of damages by one who witnesses the negligent injury of another person has confronted and perplexed the courts for decades. Yet, in our own jurisdiction, there is a surprising paucity of cases which have directly considered it. Nationwide, the courts have expressed several views. Some deny any recovery for emotional trauma in such cases. Others permit a recovery only if the claimant sustained a physical impact. Still others have ruled that physical impact is not necessary if the plaintiff was in the zone of danger. Finally, some have held that artificial distinctions such as those noted above should be disregarded and each case should be determined upon the traditional concepts of negligence and proximate cause based upon reasonable foreseeability.

See Annot., 29 A.L.R.3d 1337 (1970); *Dillon v. Legg,* 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968). Although the exact question has not been definitely answered by a decision of our own courts, it appears that Texas will follow the modern rule, and will disregard the artificial distinctions in favor of a decision based upon those traditional concepts. See *Kaufman v. Miller,* 414 S.W.2d 164 (Tex.1967); *Hill v. Kimball,* 76 Tex. 210, 13 S.W. 59 (1890); *Dave Snelling Lincoln-Mercury v. Simon,* 508 S.W.2d 923 (Tex.Civ.App. Houston-1st Dist. 1974, no writ); Comments, *Negligent Infliction Of Emotional Harm To Bystanders—Should Recovery Be Denied?,* 7 St. Mary's Law Journal 560 (1975).

■ It is generally agreed that in determining foreseeability in this type of case, several facts will be relevant: (1) whether the plaintiff was located near the scene of the accident; (2) whether the shock resulted from a direct emotional impact upon the plaintiff from a contemporaneous perception of the accident, as distinguished from learning of the accident from others after its occurrence; and (3) whether the plaintiff and the victim were closely related. See *Dave Snelling Lincoln-Mercury v. Simon,* supra; *Dillon v. Legg,* supra. Our Supreme Court has noted other factors which will bear upon the issue of foreseeability, but none of them is present here. See *Kaufman v. Miller,* supra.

■ Without question, the first relevant fact was established in this case. Melissa was present every day, including the day of the drowning, with Kecia at the day nursery. The nursery occupied a relatively small area and the pool was located immediately adjacent to the playground areas as well as the buildings. Concerning the second fact, the evidence is uncertain as to whether Melissa saw Kecia in the pool, but it is clear that she was present in the room when Kecia was brought from the pool and was there for at least some time while "mouth to mouth" and "arm lift" procedures were used in an effort to resuscitate her. The jury could have inferred from

other evidence that only a few minutes elapsed between Kecia's entry into the pool and her discovery and the resulting resuscitative efforts. In the modern view, actual observance of the accident is not required if there is otherwise an experiential perception of it, as distinguished from a learning of it from others after its occurrence. Compare, *Krouse v. Graham,* 19 Cal.3d 59, 137 Cal.Rptr. 863, 562 P.2d 1002 (1977); *Archibald v. Braverman,* 275 Cal.App.2d 253, 79 Cal.Rptr. 723 (1969). In the special circumstances of this case, we conclude that there was such a perception on the part of Melissa. In seeing Kecia brought from the pool in an emergency situation fraught with life or death drama, together with the traumatic shock of witnessing the desperate but unsuccessful attempts to save Kecia's life, Melissa was brought so close to the reality of the accident as to render her experience an integral part of it. Such an experience is far different from the case where one seeks damages for his grief or agony at merely seeing the dead body of a loved one, or upon learning of the death from others after its occurrence. We also find that the third fact was established here. Although most of the cases dealing with this type of injury involve shock to parents, at least two cases have recognized the right of a sister to recover, assuming that the other elements of foreseeability are present. *Dillon v. Legg,* supra; *Hopper v. United States,* 244 F.Supp. 314 (D.C.Colo. 1965). Foreseeability in this case is strengthened by the undisputed evidence that Kecia and Melissa attended the day nursery together and were virtually inseparable, which facts were obviously well known to Mrs. Landreth. In light of the foregoing, we conclude that the jury's award of damages to Melissa, based upon the concepts of proximate cause and foreseeability, is supported by the evidence.

### III

It is next asserted that the district court should have granted a new trial because of the individual or cumulative effect of the jury's acts in (1) rendering a quotient verdict; (2) failing to follow the court's instructions in answering the issues; (3) considering a personal experience of one of the jurors; (4) discussing insurance; and (5) discussing attorney's fees.

Grounds one and two will be discussed together. The essence of these complaints is that the jury agreed in advance to a quotient verdict; or, if there was no binding agreement, a "guideline" figure was agreed upon for the total damages, whereupon the jurors simply divided that figure and allotted arbitrary portions of it to the various damage issues without regard to the evidence on those issues. If either of these procedures was used, misconduct occurred. A quotient verdict is where the jurors agree to be bound by a figure determined by adding the sums they individually think proper and dividing that total by the number of jurors. 3 McDonald's Texas Civil Practice, Sec. 14.13, p. 568. Even if there is no agreement to be bound, which is an essential element of a quotient verdict, the acceptance by the jurors of a "guideline" figure for the total amount of damages, followed by an *arbitrary apportionment of the figure* to the several damage issues, would also be improper. *Crawford v. Consolidated Underwriters,* 323 S.W.2d 657 (Tex.Civ.App. Beaumont 1959, writ ref'd n. r. e.). Both methods are objectionable because they substitute arbitrarily ascertained figures for those which would result from intelligent deliberation. But the evidence is conflicting as to whether either was done in this case. Mr. and Mrs. Landreth produced two jurors who supported their contention, but the Reeds countered with the testimony of nine jurors who denied any agreement to be bound by a quotient, or any arbitrary apportionment of figures to the various damage issues. They agreed that a total guideline figure of $115,000.00 was accepted before the individual issues were answered, but they steadfastly denied that there was any agreement to be bound by it and they asserted that each issue was answered according to the evidence after due deliberation. It is settled that, absent an agreement to be bound by an arbitrary figure, or the arbitrary apportionment of a figure to

the several damage issues, the use of an overall figure as a mere guideline or working basis for calculating the damages is not reversible error. See *Dugat v. Hargraves,* 42 S.W.2d 683 (Tex.Civ.App. Beaumont 1931, no writ); *El Paso Electric Co. v. Collins,* 10 S.W.2d 397 (Tex.Civ.App. El Paso 1928), rev'd on other grounds, 23 S.W.2d 295 (Tex.Com.App.1930, holding approved); *Andrews v. York,* 192 S.W. 338 (Tex.Civ.App. San Antonio 1917, no writ); *Northern Texas Traction v. Evans,* 152 S.W. 707 (Tex.Civ. App. Texarkana 1913), aff'd, 108 Tex. 356, 193 S.W. 1067 (1917); *Weatherford, M. W. & N. W. Ry. Co. v. Thomas,* 175 S.W. 822 (Tex.Civ.App. Ft. Worth 1915, writ ref'd). The trial judge overruled the Landreths' motion for new trial, and in the absence of findings of fact, it is presumed that he found there was no agreement to be bound and no arbitrary apportionment of an agreed figure. *Brawley v. Bowen,* 387 S.W.2d 383 (Tex.1965); *Ruffo v. Wright,* 425 S.W.2d 663 (Tex.Civ.App. San Antonio 1968, no writ). Such a finding, when supported by sufficient evidence as it is here, is binding upon the appellate court.

The remaining misconduct allegations assert that one juror related a personal experience in a near drowning, stating that it was exceedingly painful; another juror, when a question was raised as to how the Landreths would pay any judgment entered against them, stated that she formerly worked for the welfare department and knew that day nurseries were required to carry liability insurance; and one of the jurors mentioned the fact that the attorneys would get a portion of any judgment rendered.

It is not every mention of insurance, attorneys fees or a juror's personal experience which will vitiate a verdict. If the mention was casual, was promptly rebuked and abandoned without discussion, and it does not appear that prejudice resulted to the complaining party, the error is harmless. 3 McDonald's Texas Civil Practice, Sec. 14.09, p. 560; J. Pope, *Jury Misconduct and Harm,* 12 Baylor L.Rev. 355 (Fall 1960). With respect to these occurrences, as with a quotient verdict and a guideline figure, the evidence is conflicting. Insurance and attorneys fees were definitely mentioned, but several of the jurors did not hear it. The mention was promptly rebuked and no discussion followed. Concerning the personal experience, only one juror heard it and there was no discussion. Again it must be presumed that the trial judge found that the references were casual and did not enter into the jury's deliberations. Under the circumstances, reversible error is not shown.

IV

Finally, Mr. and Mrs. Landreth urge that the jury awards to Mr. and Mrs. Reed for their pecuniary loss and to Kecia's estate for her pain and suffering are excessive and improper.

The trial judge correctly instructed the jury that in calculating the loss suffered by Kecia's parents there could only be considered the reasonable amount of her earnings and services before reaching age eighteen, less the reasonable and probable expense of her care and maintenance during such time, together with the reasonable cash value of future contributions which Kecia would in reasonable probability have made to her parents after she reached the age of eighteen years. The Landreths contend that, as Kecia was only fourteen months of age at her death and there could be no evidence of any special skills or earning capacity on her part, the economic realities of today compel the conclusion that the cost of rearing the child would exceed any expected earnings or services, resulting in a net pecuniary loss to her parents. But such an argument overlooks the right of the parents to recover for reasonably expected contributions from their daughter after she reached the age of eighteen. The evidence showed that Kecia, although of tender age, was bright, active and loving. The jury could infer from this and other evidence that in all reasonable probability the child would be of considerable financial value to her parents in their advanced years or in the event of their disability or economic

hardship. Compare: *Wales Trucking Company v. Kisener,* 373 S.W.2d 266 (Tex.Civ. App. Texarkana 1963, no writ); *Safeway Stores v. Webb,* 164 S.W.2d 868 (Tex.Civ. App. Eastland 1942, writ ref'd w. o. m.); *Galveston, H. & S. A. Ry. Co. v. Pigott,* 54 Tex.Civ.App. 367, 116 S.W. 841 (1909, writ ref'd). It is true that such deductions are based to some degree on speculation, but so is any award for future lost earnings, yet it is a universally recognized element of recovery in personal injury and wrongful death cases. To require more specific proof in a case of this type would, for all practical purposes, deny parents a right of recovery for the wrongful death of a very young child. We do not believe that to be the policy of our law. See Tex.Rev.Civ.Stat. Ann. arts. 4675, 4677. In the circumstances here, we cannot say that the jury's award of $25,000.00 to Mr. and Mrs. Reed for pecuniary loss resulting from Kecia's death is unjustified by the evidence or is excessive.

The award for Kecia's conscious pain and suffering presents more difficulty. With respect to that award, Mr. and Mrs. Landreth contend first that there was no evidence that Kecia was conscious when she entered or fell into the pool, and hence there is no evidence that she struggled or experienced pain. There was no *direct* evidence that Kecia was conscious, but conscious pain and suffering, as any other fact, may be proved by circumstantial evidence. The evidence here indicated that the only persons present at the scene were other children and the nursery employees; there was no evidence or indication of any disturbance or altercation on the premises; Kecia was in good health; she could not have been away from the other children more than a few minutes before she was found in the pool; and during the efforts to revive her a large amount of water was expelled from her body. Dr. Bailes testified that before a person drowns they struggle and gasp for breath, resulting in the intake of water into the lungs and stomach. We believe the jury was authorized to infer from all that evidence and from their own common knowledge that Kecia was alive and conscious when she entered or fell into the pool. Compare *Sharpe v. Munoz,* 256 S.W.2d 890 (Tex.Civ.App. San Antonio 1953, writ ref'd n. r. e.).

It is next asserted that the jury's award of $65,000.00 for Kecia's pain and suffering is excessive. With that contention we are compelled to agree. Pain and suffering have no market price, and compensation for them is not capable of being exactly and accurately determined. There is no fixed rule or standard for its measurement, and thus the amount must be left to the sound judgment of the jury, subject only to correction by the courts for abuse and excessiveness. But the amount allowed must be fair and reasonable, free from sentimental or fanciful standards, and based upon the facts of the particular case. In addition, it must be limited to compensation, and the jury in exercising its discretion may not roam too far. *Sharpe v. Munoz,* supra. Although each case must be judged on its own facts, courts have traditionally, and we think correctly, looked to approved awards in similar cases to determine if an award for pain and suffering is excessive. See *Sharpe v. Munoz,* supra; 17 Tex.Jur.2d, Damages, Sec. 350, p. 425. As it is difficult at best to determine the proper amount to award for pain and suffering, the comparison of an award with others which have secured the approval of juries and courts tends to reinforce a determination of whether a particular award is reasonable compensation for pain, or is to some extent the product of an understandable but improper attempt to award compensation not justified by the evidence or permitted by law.

Dr. Bailes testified that a child the age of Kecia would, in all reasonable probability, have remained conscious and suffered pain for approximately two minutes. In searching the decisions, even after considering the tremendous impact of inflation upon the value of our money, we find no precedent for an award as large as that made here for so short a period of suffering. The case of *Mitchell v. Akers,* 401 S.W.2d 907 (Tex.Civ.App. Dallas 1966, writ

ref'd n. r. e.), is almost exactly in point. A three year old child wandered into a neighbor's pool and drowned. The physician testified that the child likely experienced two to three minutes of conscious pain and suffering. The jury awarded $5,000.00, and the appellate court ruled that such an award was not excessive. Likewise, in *City of Austin v. Selter,* 415 S.W.2d 489 (Tex. Civ.App. Austin 1967, writ ref'd n. r. e.), a $10,000.00 award for pain and suffering experienced by a fourteen year old boy who drowned after struggling for several minutes to free himself from the suction of dam gates was held not excessive. On the other hand, in *Sharpe v. Munoz,* supra, a 1953 case, an award of $7,500.00 for brief conscious pain and suffering experienced by a twelve month old child who was killed in a fire was held excessive and reduced to $2,500.00 on remittitur. In *Walgreen, Inc. v. Knatt,* 506 S.W.2d 751 (Tex.Civ.App. Beaumont 1974, no writ), an award of $22,-500.00 for pain and suffering on the part of an infant who later died, which pain extended over a period of nine days, was found excessive and reduced to $12,500.00 on remittitur. And in *Burrous v. Knotts,* 482 S.W.2d 358 (Tex.Civ.App. Tyler 1972, no writ), a doctor's report indicated that the deceased, who died in a hotel fire, lived for approximately ten minutes. An award of $40,000.00 for conscious pain and suffering was reduced to $10,000.00 on remittitur.

Allowing the jury award here the benefit of every reasonable doubt, and giving full consideration to the effect of inflation since the date of the cases above noted, we have concluded that the award for Kecia's pain and suffering is excessive by $35,000.00, and that the sum of $30,000.00 constitutes reasonable compensation therefor.

If within fifteen days from August 22, 1978, appellees remit the sum of $35,000.00, the judgment below will be reformed and affirmed; otherwise, the judgment will be reversed and remanded.

ODEN, J., not participating.

RAY, Justice, concurring.

I concur with the opinion of this Court. It is a rare occasion for this Court to reduce a jury verdict, but our reduction of the damages from $65,000.00 for pain and suffering to the sum of $30,000.00 still leaves the award as the highest ever sustained by an appellate court in this State for a minor child in a death case though it is not the highest award in the nation. 49 A.L.R.3d 934 (1973).

An eminent Texas jurist, T. C. Chadick, once said:

"In a world so full of pain and suffering it is strange that no one has perfected a gauge that will accurately measure its value. . . ." *Texarkana Bus Company v. Carter,* 301 S.W.2d 300 (Tex.Civ. App. Texarkana 1957, writ ref'd n. r. e.).

While I am always reluctant for this Court to substitute its judgment for that of the jury, it does seem that $30,000.00 is an adequate award for two minutes of pain and suffering in a death case. In light of all the facts and circumstances in this case, this Court has concluded that such amount is reasonable compensation for the pain and suffering incurred by this small child. *Flanigan v. Carswell,* 159 Tex. 598, 324 S.W.2d 835, 841 (1959).