APACHE READY MIX CO., INC., Appellant,

v.

Juanita CREED, et al., Appellees.

No. 16710.

Court of Appeals of Texas, San Antonio.

May 18, 1983.

Rehearing Denied June 27, 1983.

Thomas H. Crofts, Jr., Groce, Locke & Hebdon, San Antonio, for appellant.

James L. Branton, Mitchell Rosenheim, San Antonio, for appellees.

Before CADENA, C.J., and BUTTS and DIAL, JJ.

## OPINION

BUTTS, Justice.

The primary issue in this case is whether the plaintiff mother can recover damages, both past and future, for mental anguish occasioned by injuries to her child.

On January 8, 1979, as Juanita Becky Creed drove her daughter, Alicia, to school, her automobile struck a steel cable stretched across Bandera Highway in San

Antonio. Creed's automobile was traveling about 45 miles per hour when it collided with the unmarked 30-foot cable stretched from one side of the highway to the other in front of her automobile. The cable extended from defendant's lead concrete truck, stopped in the median of the divided highway, to a second one of the defendant's concrete trucks located off the highway to the right of Creed's oncoming automobile. The two-truck cable hookup represented an effort to get the second truck in operation. Although Creed applied the brakes, the cable severed the automobile at the windshield, and the second truck hit the automobile on the passenger's side where Alicia sat. The resulting injuries to the 11-year-old rendered her a semicomatose quadriplegic.

Creed testified she "woke up" in the automobile after the collision, pinned down by the steel cable across her neck. She saw her daughter in the passenger seat with blood running down her face and without any movement. She recalled seeing "crushed glass." Creed was hospitalized with severe injuries, including a broken neck, and it was ten days before she saw the child again. At that time Alicia was in a coma, as she had been since the collision. The evidence shows there is no expected recovery; the child's predicted lifespan is twenty years or less from the time of trial. She was then receiving care at a nursing facility.

The jury found that the use of the towing cable without the statutory markers, the negligent failure of the lead driver to keep the necessary lookout, and the negligent movement of both vehicles toward the northwest-bound lane of traffic were proximate causes of the accident. These findings are not challenged on appeal. Further, we are not here concerned with the other claims and suits arising from the collision nor their previous dispositions. The only dispute in this appeal is that of damages for the mother's mental anguish.[1]

Following the recent trend of cases in Texas which have recognized this kind of tort liability, *Covington v. Estate of Foster*, 584 S.W.2d 726 (Tex.Civ.App.—Waco 1979, writ ref'd n.r.e.) presents similar facts as this case. There the parents were in the automobile collision which injured the minor daughter, and the parents suffered injuries as a result of the accident. The court reversed the case because the trial court, on motion in limine, ruled the pleadings could not be read nor proof made to the jury of mental anguish and suffering by the parents on account of the injuries sustained by their daughter. The court held the exclusion of pleadings, evidence and argument of the mental anguish and physical manifestations suffered by the parents by reason of the injuries to their daughter was error.

The Supreme Court in *Kaufman v. Miller*, 414 S.W.2d 164 (Tex.1967) recognized that a limiting test in this kind of tort case must be applied in addition to that of negligence and proximate cause. It formulated the traditional one of foreseeability: whether the injury was or should have been reasonably foreseeable to the tortfeasor. *Id.* at 167. The California case of *Dillon v.*

---

1. *Issue No. 7*

Did Becky Creed sustain mental/emotional distress or injury which manifested itself physically as a result of Alicia Creed's injuries?
Answer "Yes" or "No".
Answer:    Yes
If you have answered "Yes" to the foregoing Issue No.    7    then answer the following Issues.
In answering the following two issues, you are instructed not to include any damages for injuries to Alicia Creed. You are further instructed not to include any damages for Becky Creed's physical injuries which you have already included in answer to Issue No.    6
Issue No.    8

What amount of money do you find from a preponderance of the evidence would fairly and reasonably compensate Becky Creed for such mental/emotional distress or injury in the past?
Answer in Dollars and Cents, if any.
Answer:    $90,000
Issue No.    9
What amount of money do you find from a preponderance of the evidence would fairly and reasonably compensate Becky Creed for such mental/emotional distress or injury which she may in reasonable probability suffer in the future?
Answer in Dollars and Cents, if any.
Answer:    $90,000

*Legg,* 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968), announced that the foreseeability test should be employed in cases of mental injury resulting from witnessing the death or injury of another due to a defendant's negligence. *Id.* 69 Cal.Rptr. at 79–80, 441 P.2d at 919–20. The *Dillon* court at 69 Cal.Rptr. 80, 441 P.2d 920 outlined some factors to be considered in determining foreseeability;

(1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it.

(2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident.

(3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.

Texas courts have applied the foreseeability test since *Kaufman, supra. Sanchez v. Shindler,* 626 S.W.2d 871 (Tex.Civ.App.—Corpus Christi 1982, no writ); *Bedgood v. Madalin,* 589 S.W.2d 797 (Tex.Civ.App.—1979) rev'd on other grds., 600 S.W.2d 773 (Tex.1980). *Covington v. Estate of Foster, supra. Landreth v. Reed,* 570 S.W.2d 486 (Tex.Civ.App.—Texarkana 1978, no writ); [*Landreth,* in particular, draws on the *Dillon* factors for support.] *Dave Snelling Lincoln Mercury v. Simon,* 508 S.W.2d 923 (Tex.Civ.App.—Houston [1st Dist.] 1974, no writ). *See also: Minyard Food Stores v. Newman,* 612 S.W.2d 198 (Tex.1981), which reversed on other grounds the opinion at 601 S.W.2d 754 (Tex.Civ.App.—Dallas 1980). Given the uncontested findings of negligence in the present case, especially the act of stretching the steel cable across the highway at that time of day, we have no difficulty in finding the mental injury was or should have been reasonably foreseeable to the defendant tortfeasor.

In this case, as in *Covington,* the parent was present in the automobile at the time of the accident and was herself severely injured; she saw the child unconscious and bleeding beside her. The next time she saw her child was ten days later due to her own injuries; at that time her worst fears became reality.

Dr. Monty McMinn, a psychiatrist, testified that he first saw Becky Creed in November and December of 1979, and again in July of 1980. He described her symptoms: difficulty in concentrating, loss of capacity to work at her real estate job, preoccupation with her daughter's lack of response [Can she hear me? Can she feel my touch? What is going to happen?], feelings of depression, anger, frustration that this had happened to her daughter, flashbacks reliving the accident, crying spells, nightmares, episodes of apathy, lack of energy, sleeplessness, headaches, nervous stomach, heart palpitations, fear of crowds, anxiety. He diagnosed her condition as depressive neurosis, a physical and mental manifestation of the emotional state of mind affecting the entire body. He described it as a delayed stress reaction or syndrome like that experienced by some Vietnam war veterans. His prognosis was that there will be a time when she will become so depressed she will be disabled. She will experience loss of self-esteem and self-worth; the potential was present, he said, that could lead to her becoming psychotic and experiencing a nervous breakdown.

Jack Harper, a real estate broker and part owner of a real estate business, testified he recruited Creed to work in his firm because of her outstanding abilities as a salesperson. He stated she earned about $16,000.00 from April 15, 1978, through December of that year, whereas her earnings dropped to about $6,800.00 for 1979. Her earnings in 1980 up to September amounted to $547.00. Creed went back to work about three months after the collision, but she came to the office only one or two days each week and then worked only part of the days. Having known and worked with her for many years, he remembered that she had always been highly motivated in her work.

Alicia's father and the former husband of Creed, Roscoe Creed, recounted that appellant told him she was very sad, very de-

pressed. He stated she was not nearly as productive in her work as she was before, and that she was just not interested in doing very much anymore.

Becky Creed testified that she had moved from the house where she had lived with Alicia because she could not go by the scene of the collision and could not stay in that house.

■ In its first point of error Apache contends the evidence is insufficient, both legally and factually, to support the jury's verdict. Specifically, it argues there was no evidence to show mental anguish attributable to contemporaneous observance by the mother, and, even if there is evidence showing mental anguish attributable to later perceptions of Alicia's injuries, there is no right of recovery arising from those later perceptions. We do not believe the proof of the parent's mental anguish in this case can be neatly divided in that manner. We believe the mental anguish leading to mental injury with its resultant physical manifestations arose at the time the mother opened her eyes and saw her daughter injured beside her, and the resultant mental anguish continued. Apache has cited no case wherein compensable mental anguish was determined to end when the first contemporaneous scene viewing by the parent ended, nor are we aware of any.

It is further Apache's argument that Creed pleaded two types of mental anguish, one contemporaneous (i.e., *Covington, supra, Landreth, supra, Dave Snelling Lincoln-Mercury, supra,* and *Bedgood, supra,*) and the other "something other than contemporaneous perception of the accident itself." Making this distinction for the first time on appeal, Apache argues the "second" pleading does not give rise to a right of recovery, and is, in fact, no viable cause of action. Apache presented no exception to the pleadings before trial. Tex. R.Civ.P. 90. Nor did it object to the submission of special issues to the jury as to past mental anguish and future mental anguish. Tex.R.Civ.P. 274. Since we have stated that the mental suffering began at the time the parent saw the injured child and contin-

ued, we find there is no merit to the contention that there were two separate causes of action for recovery of damages for mental anguish, the second one arising when the mother saw her child in the hospital ten days after the injuries.

■ When on appeal the contention is there is no evidence to support the jury findings, this court must view the evidence in its most favorable light, considering only the evidence and inferences which support the findings and rejecting the evidence and inferences which are contrary to the findings. *Glover v. Texas General Indemnity Co.,* 619 S.W.2d 400, 401 (Tex.1981); *McClure v. Allied Stores of Texas,* 608 S.W.2d 901, 904 (Tex.1980). *Butler v. Hanson,* 455 S.W.2d 942, 944 (Tex.1970). We find there was probative evidence to support the jury findings of past and future mental anguish. Factual insufficiency in this case would exist if the only evidence supporting the vital fact finding (mental anguish, past and future) were factually too weak to support it. In reviewing this point we have considered all of the evidence in the record that is relevant to the fact being challenged. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 Tex.L.Rev. 361, 369 (1960). *See, In Re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951). We hold the evidence to be both legally and factually sufficient under the unique facts of this case and overrule the point of error.

Apache in point of error two complains of the trial court's action in admitting in evidence a twenty-minute videotape, without sound, of a day in Alicia's life at the Gonzales Warm Springs Hospital. It argues the film's content was not relevant to the issue of mental anguish "or any proper issue." The complaint is further that the inflammatory nature of the film's content so outweighed its relevance that its admission probably resulted in the rendition of an improper verdict.

The scenes of the silent videotape depict the child Alicia's rehabilitation treatments by physical and speech therapists, Alicia in

a hospital bed, in a wheelchair, and in other nursing care situations.

■ Becky Creed answers that the trial court believed the jury would be assisted when it viewed her participation in the medical efforts to restore the consciousness of her only child and save her life during the four months following the accident. That it was an exercise of discretion in determining that the evidentiary value and relevance outweighed any possible prejudice. The rule is stated in *Heddin v. Delhi Gas Pipeline Co.*, 522 S.W.2d 886, 889–90 (Tex.1975):

> Although photographic reproductions can be beneficial to all parties in the trial of a lawsuit, those that are merely calculated to arouse the sympathy, prejudice or passion of the jury and do not serve to illustrate disputed issues or aid the jury in its understanding of the case should not be admitted. (Citations omitted.)

Proper foundation to present the videotape showed it accurately and correctly depicted the people and scenes shown. *Sherrill v. Estate of Plumley*, 514 S.W.2d 286, 293 (Tex.Civ.App.—Houston [1st Dist.] 1974, writ ref'd n.r.e.). When a motion picture or a photograph is a proper representation of an important fact in issue, the admission or rejection of it is a matter which rests largely within the discretion of the trial judge, and that decision will not be disturbed on appeal unless an abuse of discretion is shown. *Richardson v. Missouri-K-T.R. Co. of Texas*, 205 S.W.2d 819, 824 (Tex.Civ.App.—Fort Worth 1947, writ dism'd); R. Ray, 2 TEXAS LAW OF EVIDENCE § 1466, 3rd Ed. (1980). We have seen the videotape and find that it is repetitious of the extensive evidence and testimony, live and by deposition, of doctors, therapists, the Creeds, and others who recreated the scene of the accident, and the ensuing treatment of Alicia as well as Becky Creed's mental reaction to her daughter's condition.

■ The record does not reflect that Alicia herself was presented to the jury. We surmise that the shock of that encounter may have been greater than the soundless sterility of the video screen. We find that

the rights of Apache have not been prejudiced by the introduction of the videotape, and that the trial court did not abuse its discretion in admitting the evidence. The point of error is overruled.

■ Finally, Apache urges that the jury awards to Becky Creed for mental anguish, past and future, are excessive. There is no fixed rule or standard for measuring pain and suffering. The amount is left to the sound discretion of the jury, subject only to correction by the courts for abuse and excessiveness. Tex.R.Civ.P. 440. *Landreth v. Reed, supra,* at 493. . . . [The amount allowed must be fair and reasonable, free from sentimental and fanciful standards, and based upon the facts of the particular case." *Id.* at 492. "There is hardly a hitching post to which jurors may tie in evaluating pain [We include mental anguish.] in terms of money, yet, they may not roam too far." *Sharpe v. Munoz*, 256 S.W.2d 890, 893 (Tex.Civ.App.—San Antonio 1953, writ ref'd n.r.e.).

A search of Texas cases discloses no other case with similar facts and a similar award for mental suffering with physical manifestations experienced by a parent as the result of such devastating injuries to a child. We believe the correct procedure to follow is to conclude "what sum would be held to be reasonable if it had been assessed by the jury" before we might determine the verdict to be excessive in amount. *Texas & N.O.R. Co. v. Syfan*, 91 Tex. 562, 44 S.W. 1064, 1066 (1898). It has been written that this court should "exercise its sound judicial judgment and discretion in the ascertainment of what amount would be reasonable compensation for the injury sustained . . . ." *Wilson v. Freeman*, 108 Tex. 121, 185 S.W. 993, 994 (1916); *Collins v. Gladden*, 466 S.W.2d 629, 635 (Tex.Civ.App.—Beaumont 1971, writ ref'd n.r.e.); *K-Mart No. 4195 v. Judge*, 515 S.W.2d 148, 155 (Tex.Civ.App.—Beaumont 1974, writ dism'd).

■ After an examination of the record before us, a review of other cases where remittitur resulted and their circumstances, keeping in mind the effect of inflation on

the value of money, and the unique facts of this case, we have concluded the award of $90,000.00 for past mental anguish is not excessive. We are also of the opinion that the award of $90,000.00 for future mental anguish is not excessive.

The judgment is affirmed.