**Landon JONES and Loren Jones, Appellants,**

v.

**CITY OF HOUSTON, Appellee.**

**No. 01–08–00905–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 27, 2009.

J. Mark Sudderth, Hurst, TX, Rodney C. Wiseman, Law Office of Rodney C. Wiseman, Lake Jackson, TX, for Appellant.

Andrea Chan, The City of Houston, Assistant City Attorney, Arturo G. Michel, Jaqueline Leguizamon, The City of Houston Legal Department, Houston, TX, for Appellee.

Panel consists of Justices JENNINGS, ALCALA, and HIGLEY.

## OPINION

TERRY JENNINGS, Justice.

Appellants, Landon and Loren Jones (the "Jones siblings"), challenge the trial court's rendition of summary judgment in favor of appellee, the City of Houston ("the City"), on their bystander claims for the wrongful death of their brother. In their sole issue, the Jones siblings contend that the trial court erred in granting summary judgment in favor of the City.

We affirm.

### Factual and Procedural Background

In the plaintiffs' second amended petition, the Jones siblings alleged that on June 25, 2004, Logan Jones, their thirteen-year-old brother, drowned when he was sucked into and trapped underwater in a culvert owned and maintained by the City. After spending over an hour waiting by the culvert for rescue teams to find their brother, the Jones siblings saw Logan's body float out of a culvert several blocks north of the culvert. After seeing Logan's injuries and that he had died, the Jones siblings "began to experience extreme nervousness, anxiety, depression, mental anguish, distractibility, and difficulty sleeping," and they sought recovery for these damages as bystanders. The Jones siblings based their bystander claims for wrongful death on the City's gross negligence in creating and maintaining the culvert.

The City, in its motion for summary judgment, contended that the Jones siblings were not entitled to recover for their emotional trauma and mental anguish as bystanders. The city attached to its motion, as summary judgment evidence, the depositions of the Jones siblings.

In her deposition, Logan's sister, Loren, testified that on the morning that Logan died, she was at home with her mother and a City fire department representative called her home and spoke to her mother. After the telephone call, Loren saw her mother on the floor crying. When Loren asked what had happened, her mother told her that Logan had been sucked into a drainage ditch and he could not be found. Loren then called her brother, Landon, and told him to come home "right away." When Logan arrived, the three of them went to the culvert, and Loren saw that "[f]ire trucks were everywhere" and that City police officers were trying to keep everyone away from the culvert. After a short time, a City diver arrived, and "someone" told Loren that Logan "might be stuck in an air pocket and holding on." However the diver's attempts to locate Logan were unsuccessful.

Loren further testified that after about an hour, she saw Logan's body float "out into the bayou" and he was facedown in the water and not moving. Loren's brother, Landon, turned her around so that she could not see Logan's body, but she glimpsed rescue workers trying to resuscitate him. She eventually saw the rescue workers take Logan away in an ambulance. Although Logan had been in the culvert for over an hour, Loren believed he was alive.

In his deposition, Landon testified that after receiving the telephone call from Loren, he drove to his parents' house, picked up his mother and Loren, and drove to the culvert. At the culvert, a City police officer told Landon that they had not been able to find Logan yet. Subsequently, a City diver arrived and began climbing down into different manholes around the culvert with a flashlight. "[W]ell over an hour" after Landon arrived at the culvert, his brother "floated out of the drain." Landon saw that his brother was facedown and not moving. Landon then heard his sister scream and saw her collapse. He steadied his sister and held his mother to keep her from going over to see the body. Landon saw rescue workers trying to resuscitate his brother, and then they placed him into an ambulance. Landon noticed that his brother's skin looked pale.

Based on the deposition testimony of the Jones siblings, the City argued that they were not "bystanders" because they were told about the accident when they were at their parents' house. The City asserted that it was clear that Logan had drowned some time before they arrived at the scene. The trial court granted the City's motion for summary judgment as to the bystander claims of the Jones siblings.

## Bystander Claims

In their sole issue, the Jones siblings argue that the trial court erred in granting the City summary judgment because the City's summary judgment evidence did not establish, as a matter of law, that they cannot recover damages as bystanders. The City argues that the Jones siblings are not entitled to recover as bystanders because they did not have "a contemporaneous perception of the accident," nor were they in the vicinity of the accident when it occurred.

■ To prevail on a summary judgment motion, a movant has the burden of proving that it is entitled to judgment as a matter of law and that there is no genuine issue of material fact. Tex.R. Civ. P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex.1995). A defendant moving for summary judgment must either (1) disprove at least one essential element of the plaintiff's cause of action or (2) plead and conclusively establish each essential element of its affirmative defense, thereby

defeating the plaintiff's cause of action. *Cathey*, 900 S.W.2d at 341; *Yazdchi v. Bank One, Tex., N.A.*, 177 S.W.3d 399, 404 (Tex.App.-Houston [1st Dist.] 2005, pet. denied).

Historically, Texas courts have been reluctant to allow recovery for negligently inflicted mental anguish because it is difficult to predict or verify such injuries. Accordingly, they have limited a plaintiff's ability to recover in various ways. *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 68 n. 6 (Tex.1998); *see Kaufman v. Miller*, 414 S.W.2d 164, 168–71 (Tex.1967) (recognizing that plaintiff may not recover "as a result of an injury or threatened injury to a third person" when plaintiff was "unusually or peculiarly susceptible to emotional trauma and that fact is unknown to the negligent tortfeasor"); *Houston Elec. Co. v. Dorsett*, 145 Tex. 95, 194 S.W.2d 546, 548 (1946) (limiting recovery to plaintiffs who are physically injured and in "the zone of danger"); *Hill v. Kimball*, 76 Tex. 210, 210, 13 S.W. 59, 59 (1890) (allowing recovery if plaintiff suffered "a physical personal injury . . . produced through a strong emotion of the mind"). In *Freeman v. City of Pasadena*, the Texas Supreme Court set a clear and uniform limitation on bystander recovery for mental anguish by adopting the three-factor bystander recovery test. 744 S.W.2d 923, 923–24 (Tex.1988) (citing *Dillon v. Legg*, 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912, 920 (1968)).

■ The three-factor bystander recovery test limits recovery of damages for mental harm as a bystander to plaintiffs who establish three elements. *United Servs. Auto. Ass'n v. Keith*, 970 S.W.2d 540, 542 (Tex.1998) (per curiam) (emphasis added); *see Freeman*, 744 S.W.2d at 923–24; *see also* RESTATEMENT (THIRD) OF TORTS: LIABILITY FOR PHYSICAL AND EMOTIONAL HARM § 47 (Tentative Draft No. 5, 2007)

(titled "Negligent Infliction Of Emotional Disturbance Resulting From Bodily Harm To A Third Person"). First, the plaintiff must show that he was "located near the scene of the accident, as contrasted with one who was a distance away from it." *Keith*, 970 S.W.2d at 542. Second, the plaintiff must show that he "suffered shock as a result of a direct emotional impact upon the plaintiff *from a sensory and contemporaneous observance of the accident*, as contrasted with learning of the accident from others after its occurrence." *Id.* (emphasis added); *see Freeman*, 744 S.W.2d at 924 (reasoning that plaintiff could not recover as bystander because he "did not contemporaneously perceive the accident or otherwise experience the shock of unwittingly coming upon the accident scene"); *see also* RESTATEMENT (THIRD) OF TORTS: LIABILITY FOR PHYSICAL AND EMOTIONAL HARM § 47 cmt. d. Third, the plaintiff must show that he and the victim "were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship." *Keith*, 970 S.W.2d at 542; *see also* RESTATEMENT (THIRD) OF TORTS: LIABILITY FOR PHYSICAL AND EMOTIONAL HARM § 47 cmt. e. When the material facts are undisputed, the question of whether a plaintiff is entitled to recover as a bystander is a question of law. *Keith*, 970 S.W.2d at 542. Nevertheless, the bystander elements are "flexible" and should be evaluated on a case-by-case basis. *Id.*

■ In support of their argument that they are entitled to compensation for their damages as bystanders, the Jones siblings rely on four cases: *Lehmann v. Wieghat*, 917 S.W.2d 379 (Tex.App.-Houston [14th Dist.] 1996, writ denied); *City of Austin v. Davis*, 693 S.W.2d 31 (Tex.App.-Austin 1985, writ denied); *Landreth v. Reed*, 570 S.W.2d 486 (Tex.Civ.App.-Texarkana 1978, no writ); and *Thornton v. Home Depot*

*U.S.A., Inc.*, No. A–04–CA–1039 AWA, 2006 WL 2022920 (W.D.Tex. July 17, 2006) (not published). They assert that in these four cases, as in the instant case, "the injury producing events took some time to unfold," and, in such circumstances, these cases "clearly establish that family members who learn of such a situation before reaching the scene, and are present as the events unfold and the injury is ultimately realized, can qualify as bystanders under Texas law." However, the cited cases do not establish that the Jones siblings qualify as bystanders under Texas law, and, furthermore, none of the four cases are binding on this Court.

In *Landreth*, the Texarkana Court of Appeals concluded that a jury's award of damages to a plaintiff as a bystander to her sister's drowning was supported by the evidence. *Landreth*, 570 S.W.2d at 490. The court reasoned that "actual observance of the accident is not required if there is otherwise an experiential perception of it, *as distinguished from a learning of it from others after its occurrence.*" *Id.* (emphasis added). The court recognized that "the evidence [was] uncertain as to whether [the plaintiff] saw [her sister] in the pool," but the evidence supported a conclusion by the jury that "only a few minutes elapsed between [her sister's] entry into the pool and her discovery and the resulting resuscitative efforts." *Id.* at 489–90. The court reasoned that such a situation "is far different from the case where one seeks damages for his grief or agony at merely seeing the dead body of a loved one." *Id.* at 490. Here, the evidence is undisputed that the Jones siblings did not see their brother drowning in the water, and, unlike the plaintiff in *Landreth*, the Jones siblings saw their brother's body surface after they had been waiting at the culvert for at least one hour, not minutes after he had entered the water. Additionally, the Jones siblings were not present at the culvert when the accident occurred, as was the plaintiff in *Landreth*, nor did they unwittingly come upon the accident scene.

In *Davis*, the plaintiff was not present when the accident occurred. *Davis*, 693 S.W.2d at 33. The plaintiff arrived at a hospital to visit his son, who had suffered severe neurological damage, but his son's room was empty. *Id.* at 32. In the ensuing search of the hospital, the plaintiff, accompanied by a hospital security officer, found his son's body at the base of a ten-story air shaft. *Id.* at 33. Although the plaintiff "was not at the foot of the airshaft at the moment his son fell," the Austin Court of Appeals reasoned that he had a contemporaneous perception of the accident because he "did not learn of the incident from others." *Id.* at 34; *see Freeman*, 744 S.W.2d at 924 (reasoning that plaintiff was not a bystander because he did not "experience the shock of unwittingly coming upon the accident scene"). Here, the Jones siblings went to the culvert after they had learned of their brother's accident. Unlike the plaintiff in *Davis*, they did not unwittingly come upon the accident scene.

In *Lehmann*, the Fourteenth Court of Appeals determined that a trial court had not erred in submitting a question to a jury on whether a plaintiff had a "sensory and contemporary perception" of the accident. 917 S.W.2d at 383. The court reasoned that because "the facts were disputed" as to whether the plaintiff perceived the accident or learned "of the accident from others after its occurrence," that question could be submitted to the jury. *Id.* Here, however, the evidence is undisputed that the Jones siblings learned of the accident from others before going to the culvert. *See Keith*, 970 S.W.2d at 542 ("But, when the material facts are undisputed, as they are here, whether the plain-

tiff is entitled to recover as a bystander is a question of law.").

Finally, the Jones siblings rely on *Thornton* as a "well-reasoned opinion" that "discusses application of Texas bystander law involving such ongoing events, in contrast to instantaneous injuries." *See Thornton*, 2006 WL 2022920. In *Thornton*, the plaintiff saw a fire from a distance but did not know that her house was on fire or that her sister was trapped inside the house. *Id.* at *3. Only after she arrived at her house and saw the fire did her father tell her that her sister was trapped inside the burning house. *Id.* at *3. However, unlike the Jones siblings, the plaintiff in *Thornton* had not learned of the accident from others. *Id.* Here, the Jones siblings learned about the accident from others and then chose to travel to the culvert. In doing so, they did not "experience the shock of unwittingly coming upon the accident scene." *See Freeman*, 744 S.W.2d at 924.

Moreover, even if the cases cited by the Jones siblings supported their argument, we are bound by *Keith*. In *Keith*, the Texas Supreme Court denied a plaintiff's bystander claim, in a case with similar facts, concluding that the plaintiff did not establish that she had a contemporaneous perception of the accident. 970 S.W.2d at 540–42. The Court reasoned that:

> The emotional impact that [the plaintiff] undoubtedly suffered did not result from a sensory and contemporaneous observance of the accident. In this regard, [the plaintiff] is in the same position as any other close relative who sees and experiences the immediate aftermath of a serious injury to a loved one .... The fact that [the plaintiff] arrived on the scene while rescue operations were underway and witnessed her daughter's pain and suffering at the site of the accident rather than at the hospital or some other location does not affect the analysis.

*Id.* at 542. In *Keith*, the plaintiff was asleep in her house when her daughter was injured in a car accident. *Id.* at 541. When a neighbor told the plaintiff that something had happened to her daughter, she rushed to the scene of the accident where she saw the wrecked car and heard her daughter in the wreckage making "scary noises and crying out." *Id.* The plaintiff accompanied her daughter, by ambulance, to the hospital, where her daughter died. *Id.*

Although the Jones siblings do not cite or discuss *Keith*, they do argue that "cases involving automobile accidents and analogous instantaneous occurrences" are distinguishable from the circumstances in this case because here, "the injury producing events took some time to unfold." However, we discern no analytically significant difference between the car accident in *Keith* and the drowning in this case. In *Keith*, the plaintiff did not see the car accident but later went to the scene of the collision and saw her daughter taken out of the wreckage and transported to the hospital where she died. *Id.* Similarly, here, the Jones siblings did not see their brother drown, but they did go to the scene where they saw his body taken out of the water and transported to the hospital. In both cases, a family member was informed of an accident, went to the scene, and saw the effect of the accident. *See id.* *Keith* controls our holding.

Accordingly, we hold that the City's summary judgment evidence established as a matter of law that the Jones siblings could not recover as bystanders for any mental anguish and emotional trauma caused by their brother's drowning. Thus, we further hold that the trial court did not err in granting the City summary judg-

ment on the bystander claims of the Jones siblings.

We overrule the Jones siblings' sole issue.

## Conclusion

We affirm the judgment of the trial court.

Justice ALCALA, dissenting.

ELSA ALCALA, Justice, dissenting.

This case concerns the bystander claims filed by the siblings of a 13–year–old child, Logan Jones, who died as a result of drowning in a City of Houston culvert that did not have a protection grate to block the culvert. For two reasons, I respectfully dissent from the majority opinion's rejection of the claims. First, contrary to the applicable law for review of summary judgments, the majority opinion fails to view the evidence in a light most favorable to the non-movant plaintiffs, the appellants, Landon and Loren Jones. Second, the majority opinion misapplies the precedent of the Texas Supreme Court and Texas intermediate courts. Because the record includes some evidence that the event was ongoing when the Jones siblings were present at the culvert, I would reverse the summary judgment and remand for trial.

## The Evidence

Loren learned from a telephone call that her brother Logan "was sucked into a drainage ditch and they could not find him." Lauren called Landon, the brother of Loren and Logan, who quickly returned to the house. Landon, Loren, and their mother then went to the nearby culvert. There, Loren learned that rescue workers "were looking for him" and that Logan "might be stuck in an air pocket" holding on. Landon watched a diver search for Logan for 30 minutes, going into several manholes, until Logan floated into the bayou. Although Logan had been in the culvert for about one hour when he appeared, rescue workers performed Cardio Pulmonary Resuscitation (CPR) on Logan "trying to resuscitate him," and Landon believed that those efforts might allow Logan to survive.

Houston Police Department dive team officer Mark Janson received the call for assistance. Janson believed "there was a possibility of a rescue." Janson explained that when he arrived at the culvert, he hoped Logan "could be in an air pocket up in the streets." As he searched for Logan, Janson was "very, very focused on trying to locate [Logan's] body, locate him hopefully alive." When Logan was found, Janson believed it was a "possible live recovery" and he was "hopeful that [Logan] was going to make it." In hindsight, Janson changed his opinion to a belief that Logan "was expired before [Janson] ever arrived at that scene."

The majority opinion erroneously sees the evidence in a light favorable to the movant, the City, by contending there is no dispute Logan died before the siblings arrived. But there is a dispute. Although the diver said that in hindsight he believed Logan was deceased before the diver arrived, the diver acknowledged that his state of mind was different during the events. The diver testified that at the time of the events, he conducted a rescue search for a live person under the belief that Logan could have survived by finding an air pocket under the street and that CPR was conducted on Logan to try to resuscitate him. If the evidence was "undisputed" that Logan was deceased when his siblings arrived, as the majority contends, then the evidence would conclusively show that the diver was conducting a *recovery* mission to seize the body of Lo-

gan and no CPR would have been conducted on the deceased body. The evidence shows a dispute whether Logan was alive at the time the siblings arrived at the culvert, and, therefore, a dispute exists whether the siblings observed the drowning or merely its aftermath. That is the type of dispute that must be resolved by a jury. *See Lehmann v. Wieghat*, 917 S.W.2d 379, 383 (Tex.App.-Houston [14th Dist.] 1996, writ denied) (holding proper to submit to jury question of fact concerning whether plaintiff perceived accident or learned "of the accident from others after its occurrence"). Viewing the evidence and all reasonable inferences from the evidence in a light most favorable to the non-movant, as required, there is a genuine issue of material fact that the event was ongoing while Landon and Loren were present at the culvert. *See* Tex.R. Civ. P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex.1995).

### The Law

The majority opinion acknowledges that three intermediate courts and one federal district court have issued decisions contrary to its holding. *See Lehmann*, 917 S.W.2d at 383 (holding proper to submit bystander claim as question of fact to jury when evidence showed bystander did not see shooting, bystander was about one-half mile to mile away when victim was shot, shooter told bystander about having shot victim, and bystander then saw victim lying unconscious in bed of truck); *City of Austin v. Davis*, 693 S.W.2d 31, 32–33 (Tex.App.-Austin 1985, writ denied) (upholding bystander claim even though father did not see son's actual fall when evidence showed father arrived at hospital to visit son, found son's room empty, searched hospital, and found son's body at base of air shaft); *Landreth v. Reed*, 570 S.W.2d 486, 490 (Tex.App.-Texarkana 1978, no writ) (upholding bystander claim even though bystander did not see victim's entry into pool because "jury could have inferred from other evidence that only a few minutes elapsed between [victim's] entry into the pool and her discovery and the resulting resuscitative efforts"); *Thornton v. Home Depot U.S.A., Inc.*, No. A–04–CA–1039 AWA, 2006 WL 2022920 (W.D.Tex. July 17, 2006) (unpublished order) (upholding bystander claim when bystander did not see fire actually harm her sister but saw fire and heard from others her sister was trapped inside burning house). The majority opinion, however, attempts to distinguish these decisions by claiming Logan was undisputedly deceased when the siblings got to the culvert, which I have addressed in the preceding section, and by asserting (A) the siblings did not "unwittingly" come upon the event and (B) the *Keith* decision compels the result.[1]

### A. The Plaintiff Need Not Be "Unwitting"

To support its position that the plaintiff must "unwittingly" come upon the accident scene, the majority opinion cites to *Freeman v. City of Pasadena*, 744 S.W.2d 923, 924 (Tex.1988), which states, "In our case it is undisputed that Freeman did not contemporaneously perceive the accident or otherwise experience the shock of unwittingly coming upon the accident scene." By its phrasing, the supreme court in *Freeman* articulated two alternatives. In one alternative, the bystander can recover if he contemporaneously perceives the accident. In the second alternative, the bystander can recover if he experiences the shock of "unwittingly" coming upon the accident scene. It is the first alternative that applies here. The siblings contemporaneously perceived the events in that they

---

1. *United Servs. Auto. Ass'n v. Keith*, 970 S.W.2d 540, 542 (Tex.1998) (per curiam).

were present at the culvert while a diver conducted a search for a live person and when CPR was performed to resuscitate Logan after he surfaced.

The majority opinion creates a new rule disallowing a bystander claim in every instance in which the plaintiff knows about the existence of an event before seeing the event. This means that when family members learn of a loved one in danger, they automatically forego any right to recover as a bystander if they opt to assist their loved one while their loved one is facing danger. That, of course, was not the intention of *Freeman*, which recognizes that even if a bystander knowingly encounters the event, the bystander may pursue his claim if he contemporaneously perceives the occurrence. *See id.*

**B. The *Keith* Decision Does Not Compel the Result**

It appears the primary reason the majority opinion holds in favor of the City is a faulty reliance on a distinguishable decision by the Texas Supreme Court. *See United Servs. Auto. Ass'n v. Keith*, 970 S.W.2d 540, 542 (Tex.1998) (per curiam). In *Keith*, Keith arrived at the scene of her daughter's auto collision, where she saw the wreckage and heard her daughter making "scary noises and crying out." *Id.* at 541. The court determined Keith could not recover as a bystander because she did not have a "sensory and contemporaneous observance of the accident." *Id.* at 542. The court explained that Keith "is in the same position as any other close relative who sees and experiences the immediate aftermath of a serious injury to a loved one." *Id.* The court stated that the "fact that Dianna Keith arrived on the scene while rescue operations were underway and witnessed her daughter's pain and suffering at the site of the accident rather than at the hospital or some other location does not affect the analysis." *Id.* The

court explained that "Texas law still requires the bystander's presence when the injury occurred and the contemporaneous perception of the accident." *Id.*

Unlike *Keith*,

- the Jones siblings watched the ongoing event as the divers searched for Logan, who the diver and the siblings believed could be alive in an air pocket as he was trapped in the culvert; and

- the Jones siblings were not watching the immediate aftermath of a serious injury to a loved one but were instead watching to see whether the loved one would escape injury in the ongoing event of the occurrence.

Courts have uniformly held that a loved one need not actually see the deceased take his last breath if there is an "experiential perception" of it. *See Davis*, 693 S.W.2d at 32–33; *Landreth*, 570 S.W.2d at 490; *Thornton*, 2006 WL 2022920 at *3. Like *Landreth*, the siblings were "brought so close to the reality of the accident as to render [their] experience an integral part of it." *Landreth*, 570 S.W.2d at 490.

The majority opinion takes too narrow a view of "contemporaneous observance of accident" by confining it to events that occur in a split second, like car collisions. Instead, when the event does not occur in a split second, courts have applied a broader view of "contemporaneous observance of accident" to include the beginning of the event, as well as the ongoing event, such as the search for a lost child, a fire, or a drowning. Because the reasonable inference of the evidence in a light favorable to the non-movant shows that the siblings were present when Logan drowned, I respectfully dissent to the majority's affirmance of the trial court's summary judgment, which precluded a jury trial in this case.

## Conclusion

I would reverse the summary judgment and remand for trial.